538 F.2d 471
 92 L.R.R.M. (BNA) 3011, 80 Lab.Cas. P 53,877
 CONNECTICUT STATE FEDERATION OF TEACHERS et al., Appellants,
v.
BOARD OF EDUCATION MEMBERS et al., Appellees.
 No. 720, Docket 75-7436.
 United States Court of Appeals,
Second Circuit.
 Argued March 8, 1976.
Decided May 21, 1976.
 
 Karl Fleischmann, Hartford, Conn., for appellants.
 Martin A. Gould, Hartford, Conn., for appellees.
 Before KAUFMAN, Chief Judge, and SMITH and ANDERSON, Circuit Judges.
 ROBERT P. ANDERSON, Circuit Judge:
 
 
 1
 The plaintiffs-appellants, who are the local unions of the Connecticut State Federation of Teachers (CFT) in the Connecticut towns of Hamden, Westport, Bridgeport, Stratford, and Bloomfield, and the president of each local, allege a deprivation of rights guaranteed by the First and Fourteenth Amendments to the federal constitution in this action under 42 U.S.C. § 1983 for declaratory relief.[1] The defendants-appellees are members of the boards of education in each of the five towns, and the local affiliate of the Connecticut Education Association (CEA) in each town. Jurisdiction is based on 28 U.S.C. § 1343, as well as on 28 U.S.C. § 1331(a) because federal constitutional questions are raised and the amount in controversy is alleged to exceed $10,000.
 
 
 2
 The CFT local in each of these towns is a minority union which has been unsuccessful in the representational elections. By a majority vote of the teachers in each of the towns, the CEA affiliate has been designated to act as their exclusive collective bargaining representative labor negotiations with the respective school board, pursuant to the Connecticut Teacher Negotiation Act, Conn.Gen.Stat. §§ 10-153a et seq.
 
 
 3
 The appellants claim that certain school board policies and collective bargaining provisions pertaining to the use of school mailboxes, bulletin boards, and meeting facilities,[2] in force in the respective towns, infringe upon teachers' "fundamental rights (which) are guaranteed to them by the First Amendment to the Constitution of the United States as made applicable to the states[3] by the Fourteenth Amendment." These are "the right to speak on issues of public importance and to communicate with each other on matters of organizational interest or business" and "the right to associate together for the achievement of lawful purposes." It is further alleged that the policies and practices result in discrimination between the plaintiff organizations and the CEA affiliates and deny to the plaintiff organizations equal protection of the law as guaranteed to them by the Fourteenth Amendment.
 
 
 4
 As the parties had agreed that there were no genuine issues of disputed facts, no evidentiary hearing was held by the court below; and the case was decided on cross-motions for summary judgment on the basis of the complaint, the answers, and the parties' oral arguments and memoranda of law. When entering summary judgment in favor of the defendants-appellees on June 30, 1975, the district court cited several cases[4] in which similar claims, raised by minority public employee unions, had been rejected, and also noted that
 
 
 5
 "The Supreme Court has long approved the grant of exclusive rights to a labor organization that has been elected the collective bargaining representative. N.L.R.B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 44, 57 S.Ct. 615, 81 L.Ed. 893 (1937); see N.L.R.B. v. Allis-Chalmers Mfg. Co., 388 U.S. 175, 180, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967)."
 
 
 6
 The appellants on appeal argue that the district court, as well as the cases which it cited, failed to apply the correct constitutional standards to the issues raised. They assert that the respective school boards may not enforce the policies and practices in question because they restrict not only communication with other teachers but their right of association as well, by inhibiting the recruitment of CFT members among teachers, and that no showing has been made that the activities in which the minority union wishes to engage would materially and substantially interfere with the requirements of appropriate discipline in the operation of the schools. As principal authority, appellants rely on Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); Healy v. James, 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972); and James v. Board of Education, 461 F.2d 566 (2 Cir.), cert. denied, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 49 (1972).
 
 
 7
 Appellants also argue that by granting the CEA affiliates in Hamden and Westport use of mailboxes, bulletin boards, and meeting facilities; by giving CEA affiliates in Westport, Bridgeport, Stratford, and Bloomfield dues check-off privileges; and by permitting teachers in Bridgeport, Stratford, and Bloomfield to rescind their check-off authorizations only at specified times, the respective school boards discriminate against CFT affiliates and their members in violation of the Equal Protection Clause. Specifically, they claim the grant of these privileges gives the majority union in each town a significant advantage in attracting and keeping members, and in maintaining its status as the majority union and exclusive bargaining representative. While the CFT locals recognize that they do not have any right to participate in collective bargaining with the school boards because they are not the designated bargaining agents, they claim they should be given equal access to teachers for purposes of attaining such status of bargaining agent. Appellants further contend that fundamental First Amendment rights of speech and association are involved, and the discriminations are, therefore, impermissible unless the boards can establish that a "compelling state interest" is promoted by the disparate treatment. Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).
 
 
 8
 The school boards, on the other hand, claim that their policies are necessary to prevent constant inter-union rivalry from turning schools into a "labor battleground" and that under the "majority rule" principle of American labor law, an exclusive bargaining representative may be accorded preferential rights in order better to enable it to carry out its duties. They assert that minority unions have no right to dues deduction privileges, as the "checkoff" is won for itself by the majority union only through the process of collective bargaining.
 
 
 9
 In reply, the appellants claim that the defendants-appellees have shown no "compelling state interests"; that the "majority rule" principle cannot be extended so as to justify the infringement of plaintiffs' constitutional rights; and that the grant of the privileges herein exceeds what is necessary for the bargaining agent successfully to perform its representational duties.
 
 
 10
 With regard to the constitutional issues raised by the appellants, we sustain the ruling of the district court on the First Amendment claim, as more fully discussed below; but we are of the opinion that the issues raised under the equal protection claims should first be resolved by reference to state law, as it is determined and applied by the Supreme Court of Connecticut, before resort to the federal courts on the questions of the constitutionality of the challenged policies and contractual provisions. Since plaintiffs' complaint did not allege pendent jurisdiction and in fact did not assert the state law claims, the case is remanded to the district court with a direction that it vacate its decision as to the equal protection issue, and that it dismiss that part of the action, without prejudice to plaintiffs' seeking relief on this issue in the courts of Connecticut.
 
 
 11
 This case presents the all-too-familiar situation in which a dispute, commonplace in the private sector, becomes constitutional litigation by virtue of the fact that public employers (the school boards) are involved, rather than private entities, and the plaintiffs are, therefore, able to turn a problem of labor relations into a constitutional issue. Mindful of the undesirability of becoming entangled in the operation of local school systems, we nevertheless must address this case in a constitutional, rather than a private-law, framework. Despite its constitutional gilding, however, this case involves us, to paraphrase Chief Judge Kaufman, in the "unwelcome" task of "meddling in an intramural fray" among two teachers unions and their board of education employers. Fuentes v. Roher, 519 F.2d 379, 381 (2 Cir. 1975).
 
 First Amendment Claims
 
 12
 It is unquestioned that teachers may not be required to check their constitutional rights outside the "schoolhouse gate." Tinker v. Des Moines Independent School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); James v. Board of Education, 461 F.2d 566 (2 Cir.), cert. denied, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 491 (1972). Nor can it be questioned that the First Amendment's protection of speech and associational rights extends to labor union activities. Thomas v. Collins,323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945); Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); American Federation of State, County, and Municipal Employees v. Woodward, 406 F.2d 137 (8 Cir. 1969); McLaughlin v. Tilendis, 398 F.2d 287 (7 Cir. 1968). Of course, teachers' exercise of First Amendment rights in the schools is subject to reasonable regulation, just as it is in the community at large. Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); cf. Kelley v. Johnson, --- U.S. ----, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976); Hudgens v. NLRB, --- U.S. ----, 96 S.Ct. 1029, 47 L.Ed.2d 196 (U.S., March 3, 1976); Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); Healy v. James, 408 U.S. 169, 192-93, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972); Adderley v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966); Cox v. Louisiana, 379 U.S. 536, 554, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). And purely economic activities of a group of persons who associate for a common purpose are not protected by the First Amendment. Hanover Township Federation of Teachers Local 1954 v. Hanover Community School Corp., 457 F.2d 456, 461 (7 Cir. 1972). The school administration, however, may not infringe on teachers' exercise of their First Amendment rights absent a showing that, without the infringing policy or regulation, there would be a substantial and material interference with the requirements of appropriate discipline in the operation of the schools. In making this showing, the administration must rely on reasonable inferences drawn from concrete facts, not on the mere apprehension or speculation that disturbances or interferences with appropriate discipline will occur. Tinker, supra, 393 U.S. at 509, 89 S.Ct. 733; James v. Board of Education, supra, 461 F.2d at 571; see also Eisner v. Stamford Board of Education, 440 F.2d 803 (2 Cir. 1971). The problem for the court then becomes one of arriving at an appropriate balance between the interests of the teachers, in exercising their First Amendment rights, and that of the school board as an employer, in promoting the efficiency of the services it provides through its employees, the teachers. Pickering v. Board of Education, supra, 391 U.S. at 568, 88 S.Ct. 1731; James v. Board of Education, supra, 461 F.2d at 572; cf. Rhoads v. McFerran, 517 F.2d 66, 68 (2 Cir. 1975). It must be remembered that the primary function of the schools is the education of the community's children.
 
 
 13
 While the preceding paragraph states generally applicable principles of law, however, it must be emphasized that this is not a case involving a teacher's right to wear an armband to protest political events, cf. James v. Board of Education, supra. Nor does it involve a prohibition on the distribution of all literature by teachers at all times in all areas of the school premises, cf. Friedman v. Union Free School District, 314 F.Supp. 223 (E.D.N.Y.1970); or a prohibition on teachers' collection, during their free periods, of other teachers' signatures on a petition directed to state officials, cf. Los Angeles Teachers Union v. Los Angeles City Board of Education, 71 Cal.2d 551, 78 Cal.Rptr. 723, 455 P.2d 827 (1969); or a total prohibition on teachers expressing themselves, outside working hours, on matters of general public concern, cf. Pickering v. Board of Education, supra. It does not even involve the dismissal of teachers for membership in or association with "undesirable" groups, cf. Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); including the American Federation of Teachers, cf. McLaughlin v. Tilendis, supra ; or for publicly criticizing the school administration, cf. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); or for engaging in other First Amendment activities, cf. Bertot v. School District No. 1, Albany County, Wyoming, 522 F.2d 1171 (10 Cir. 1975); or a prohibition on union members' expression of opinion to the general public on matters of labor-management relations that are of public concern, cf. Thornhill v. Alabama, supra. Rather, this case involves more narrowly-focused "rights," namely, the asserted right of teachers to utilize certain of the school's internal communications facilities to communicate with other teachers concerning employment matters (broadly defined), and to associate for the purpose of achieving common goals on employment matters. Specifically, appellants are the members of a minority union which seeks to use the school's internal channels of communications to increase its power and status among the teachers, so that it may eventually become the majority union and exclusive bargaining representative.
 
 
 14
 CFT correctly argues that the school boards must meet a burden of justification if they are to enforce a regulation which infringes on teachers' First Amendment rights. But the mere invocation of the words "speech" and "association" in a complaint does not put the boards to this test. Rather, before CFT can put the defendant school boards to this burden of justification, CFT must show that its members' First Amendment rights have in fact been infringed by the school boards' policies. The question is whether or not there is a real abridgement of the rights of free speech. Kovacs v. Cooper, 336 U.S. 77, 85, 69 S.Ct. 448, 93 L.Ed. 513 (1949) (plurality opinion). First Amendment claims must always be adjudicated in light of the special characteristics of the environment involved in the particular case. Tinker, supra, 393 U.S. at 506, 89 S.Ct. 733; Healy v. James, supra, 408 U.S. at 180, 92 S.Ct. 2338. Here, we do not think appellants' First Amendment rights are actually infringed by the Hamden and Westport "mailbox" policies. We base this conclusion on two factors: the non-public nature of the communications facilities (and the communications) in issue; and the alternative opportunities, for communication among teachers, which are available to appellants.Public nature of the facilities
 
 
 15
 The public or private nature of the facilities or fora in which First Amendment rights are sought to be exercised, the nature of their essential purpose, and the normal use made of them, are factors to be considered in determining whether a denial of access to the facilities or fora constitutes an abridgement of First Amendment rights. Rhoads v. McFerran,supra, 517 F.2d at 68; Wolin v. Port of New York Authority, 392 F.2d 83 (2 Cir.), cert. denied, 393 U.S. 940, 89 S.Ct. 290, 21 L.Ed.2d 275 (1968). It is well established that the state may set aside certain of its property for purposes inconsistent with the use of that property as a public forum. Adderley v. Florida, supra; Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc., 391 U.S. 308, 320, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968); Benson v. Rich, 448 F.2d 1371, 1373 (10 Cir. 1971), cert. denied, 405 U.S. 978, 92 S.Ct. 1197, 31 L.Ed.2d 254 (1972); cf. Greer v. Spock,--- U.S. ----, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976); Hudgens v. NLRB,supra, --- U.S. ----, 96 S.Ct. 1211, 47 L.Ed.2d 505; Lehman v. City of Shaker Heights, 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974). Similarly, neither teachers, students, nor anyone else has an absolute constitutional right to use all parts of a school building for unlimited expressive purposes. Grayned v. City of Rockford, supra, 408 U.S. at 117-18, 92 S.Ct. 2294; cf. Greer v. Spock, supra; Adderley v. Florida,supra, 385 U.S. at 47, 87 S.Ct. 242. "The State is not required to provide plaintiffs with a special forum in order to advocate their views," Winston-Salem/Forsyth County Unit of the North Carolina Association of Educators v. Phillips, 381 F.Supp. 644, 646 (M.D.N.C.1974); nor do "people who want to propagandize protests or views have a constitutional right to do so whenever and however they please," Greer v. Spock, supra, --- U.S. at ----, 96 S.Ct. at 1216, 47 L.Ed.2d at 1216, quoting Adderley v. Florida, supra,385 U.S. at 47, 87 S.Ct. 242. Rather, "that concept of constitutional law was vigorously and forthrightly rejected" in both Cox v. Louisiana, supra,379 U.S. at 554-55, 85 S.Ct. 453 and 563-64, and Adderley, 385 U.S. at 47, 87 S.Ct. 242.[5] (The State's ability to refuse access to a particular forum or facility presupposes the existence of adequate available alternative means to reach the intended audience; that is, the principles stated above would not support a total bar on all First Amendment activities on all the State's property. Compare Albany Welfare Rights Organization v. Wyman, 493 F.2d 1319, 1323 (2 Cir.), cert. denied, 419 U.S. 838, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974); Friedman v. Union Free School District, supra; Los Angeles Teachers Union v. Los Angeles City Board of Education, supra. As we discuss infra, such alternative means are available to these appellants.)
 
 
 16
 Here, the school mailboxes, bulletin boards, and meeting rooms which appellants seek to use for First Amendment speech and associational activities are not public fora. They are unlike a street, sidewalk, park, or other similar place so historically associated with the exercise of First Amendment rights that access to them for purposes of exercising such rights cannot constitutionally be denied broadly and absolutely. Nor do they resemble a "public thoroughfare" so as to make them an appropriate place for the exercise of First Amendment rights. See Albany Welfare Rights Organization v. Wyman, supra. It is not alleged that these facilities are available for general public use, although not even such an availability would necessarily turn the case in appellants' favor, cf. Greer v. Spock, supra. On the contrary, as the court stated in Local 858, American Federation of Teachers v. School District No. 1 in the County of Denver, 314 F.Supp. 1069, 1075 (D.Colo.1970):
 
 
 17
 "This case presents a problem of labor relations, and although the problem is in the context of public employment, this does not alter its essential characteristic. Plaintiffs are a labor union and its officials and members, and they are seeking to utilize only those channels of school communication which are not traditionally of a public nature for the purpose of furthering the goals of their union." (Emphasis added.)
 
 
 18
 The defendants Hamden and Westport school boards have established the school mailboxes and bulletin boards for the primary purpose of internal communication of school-related matters to the teachers. This is the normal use of these facilities. The boards have no constitutional obligation per se to let any organization use the school mailboxes, bulletin boards, or meeting rooms, to communicate its views to the teachers, id. at 1076; Note, 49 Notre Dame Law. 1064, 1072 (1974), whether or not the subject-matter of the communication is school-related. Since the facilities are not ordinarily open to the public, access to them for the purpose of engaging in First Amendment activities may be denied altogether. Amalgamated Food Employees v. Logan Valley Plaza, supra, 391 U.S. at 320, 88 S.Ct. 1601.
 
 
 19
 Further, it is questionable whether the types of communications appellants would make through these facilities, being primarily union and employment related matters, and of interest mainly to other teachers, are " public" communications. See Roseman v. Indiana University of Pennsylvania,520 F.2d 1364 (3 Cir. 1975) ("(Teacher) Roseman's expressions were essentially private communications in which only members of the Foreign Languages Department and the Dean of the College of Arts and Sciences were shown by the plaintiff to have had any interest"). As did the Third Circuit in Roseman, we conclude that since appellants seek to use facilities not open to the general public, and to transmit communications of limited public interest, the First Amendment interests in allowing them access to these facilities are " correspondingly reduced."
 
 Alternative communications opportunities
 
 20
 The availability of alternative means of communication is a relevant factor in any case in which First Amendment rights are arrayed against asserted governmental interests. Pell v. Procunier, 417 U.S. 817, 824, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Cf. Lloyd Corp. v. Tanner, 407 U.S. 551, 566-67, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972); Asociacion de Trabajadores Agricolas v. Green Giant Co., 518 F.2d 130, 138 (3 Cir. 1975); Garcia v. Gray, 507 F.2d 539, 543 (10 Cir. 1974), cert. denied, 421 U.S. 971, 95 S.Ct. 1967, 44 L.Ed.2d 462 (1975). See Note, 28 Stan.L.Rev. 117, 125, 143 (1975). Here, the appellants have numerous adequate, alternative opportunities to reach their desired audience. Absent specific allegations to the contrary, we can fairly assume that teachers in a given school may discuss union-related matters with each other before and after school and during mutual free periods and lunch. They may confer on these matters or pass union notices to each other in the teachers' lounge, the halls, and in each others' classrooms, when this does not interfere with the performance of their teaching duties. The notices may even be mailed to teachers' homes. Teachers may call each other at home to discuss union matters, or meet off-campus. The existence of such opportunities for communication among teachers in Hamden and Westport schools make the mere denial to CFT of the right to post notices on the school bulletin boards, or to distribute notices through the teachers' mailboxes, so inconsequential that it cannot be considered an infringement of First Amendment rights of free speech. These alternative means of communication may also be utilized in the exercise of associational rights, and therefore the denial to CFT of access to mailboxes, bulletin boards, and meeting rooms is only a de minimis interference with those rights.[6] See Local 858, supra, 314 F.Supp. 1076-77.
 
 
 21
 Plaintiffs' complaint also alleges that, as a matter of school board policy in Hamden, the majority union is given access to school facilities for the conduct of meetings, while "other groups" must "apply" to a designated official for permission to hold meetings in school facilities. Plaintiffs-appellants have failed to allege, though (let alone offer any evidence), that (a) the Hamden CFT local has ever requested permission to hold a meeting on school property; (b) such a request has ever been denied by the designated official; or (c) that, if such a request was denied, the denial was for a constitutionally impermissible reason. If the CFT local is given permission freely to hold its meetings in school facilities (and we will not assume, absent specific allegations, that the Hamden defendants engage in unconstitutional conduct in this respect), the "difficulty" involved in requesting this permission from the designated official hardly can be considered an infringement on the First Amendment rights of CFT members.
 
 
 22
 Of course, the existence of other alternatives does not extinguish altogether any constitutional interest on the part of appellants in the use of these particular facilities. Pell v. Procunier, supra, 417 U.S. at 823, 94 S.Ct. 2800, citing Kleindienst v. Mandel, 408 U.S. 753, 765, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972); Schneider v. State, 308 U.S. 147, 163, 60 S.Ct. 146, 84 L.Ed. 155 (1939); Wolin v. Port of New York Authority, supra, 392 F.2d at 91-92. But these other alternatives, coupled with the non-public nature both of the facilities appellants seek to use and of the communications they seek to make, compels the conclusion that appellants have little or no First Amendment interests at stake herein. Thus it is unnecessary to decide whether appellees' "labor battleground" justification is supported by the specific factual showing required by Tinker and James v. Board of Education. Appellants' First Amendment interests are so limited that it is clear they are not entitled to prevail in a Pickering v. Board of Education balancing against the policies of the Hamden and Westport school boards.
 
 Dues check-off provisions
 
 23
 We reject appellants' claim that the denial of dues deduction privileges to the CFT locals constitutes a violation of First Amendment associational rights. Under current law no union has an absolute right to "the special aid of the (employer's) collection and disbursing facilities." Bauch v. City of New York, 21 N.Y.2d 599, 608, 289 N.Y.S.2d 951, 956, 237 N.E.2d 211, 215, cert. denied, 393 U.S. 834, 89 S.Ct. 108, 21 L.Ed.2d 105 (1968); Local 858, supra, 314 F.Supp. at 1077; Local 660, International Association of Firefighters v. City of Charlotte, 381 F.Supp. 500, 502 (W.D.N.C.1974), aff'd, 518 F.2d 83 (4 Cir.), cert. granted, 423 U.S. 890, 96 S.Ct. 186, 46 L.Ed.2d 121 (1975). Rather, dues deduction privileges are won by a union through the give-and-take of collective bargaining with an employer. Cf. H. K. Porter Co. v. NLRB, 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970).
 
 Equal Protection Claims
 
 24
 The essence of appellants' equal protection claim is that the grant of certain exclusive privileges to the majority unions access to mailboxes, bulletin boards, and meeting facilities, and dues check-offs, plus the "lock-in" of dues deduction authorization gives the CEA locals advantages in maintaining their status as the majority unions and exclusive bargaining agents. Since First Amendment associational rights are involved, it is asserted that these exclusive privileges become unconstitutional. They key to plaintiffs' claim, of course, is the theory that since their employer is a public body rather than a private firm, what would otherwise be just an organizational right, in the labor law sense, becomes a constitutional right, complete with a "strict scrutiny" (Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969)) standard of judicial review.
 
 
 25
 Our holding against appellants' First Amendment claims, although relevant, is not necessarily dispositive of appellants' equal protection claims, since the latter turn not simply on access per se to certain facilities and privileges, but rather on discriminatory treatment, vis-a-vis appellants' associational competitors, concerning this access. A state may impose reasonable regulations on the use of its facilities for First Amendment activities, and may even forbid such a use of certain of its facilities, but it may not discriminate in the regulations of First Amendment activities. Cf. Hudgens v. NLRB, supra, --- U.S. ----, 96 S.Ct. 1029, 47 L.Ed.2d 708; Police Department of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); Tinker, supra, 393 U.S. at 510-11, 89 S.Ct. 733; Brown v. Louisiana, 383 U.S. 131, 143, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966). Here, were there a discrimination in fact (i.e., one that puts the minority unions at an actual disadvantage in the competition for membership and majority status), between the CFT and CEA locals in their exercise of associational rights, the defendant school boards would be put to the test of demonstrating that the policies in question are necessary to further a compelling state interest. Shapiro v. Thompson, supra ; see also Roe v. Wade, 410 U.S. 113, 155, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); United States v. Kras, 409 U.S. 434, 446, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); Notes, 87 Harv.L.Rev. 1534, 1535 n. 9 (1974), and 72 Mich.L.Rev. 800, 810 (1974). As the Court stated in Mosley, supra, 408 U.S. at 95, 92 S.Ct. at 2290, "(T)he crucial question is whether there is an appropriate governmental interest suitably furthered by the differential treatment."
 
 
 26
 Of course, the school boards might be able to make a threshold showing that there is no "discrimination" because, as respects the purpose of the privileges granted, the CEA and CFT locals are not similarly situated. This would be in accordance with the principle that the equal protection clause does not deny to government the power to treat different classes in different ways, but rather only denies government the power to accord different treatment to persons placed into different classes on the basis of criteria wholly unrelated to legitimate governmental objectives. See Schlesinger v. Ballard, 419 U.S. 498, 508-10, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975); Johnson v. Robison, 415 U.S. 361, 374, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); Reed v. Reed, 404 U.S. 71, 75-76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); see generally Tussman & tenBroek, The Equal Protection of the Laws, 37 Calif.L.Rev. 341, 344 ff. (1949); Developments in the Law Equal Protection, 82 Harv.L.Rev. 1069, 1076 (1969). Such a showing, if it could be made, would presumably take the form of demonstrating that the privileges extended to the (majority) CEA locals are reasonably necessary to the performance of the exclusive representational responsibilities placed on these locals by Conn.Gen.Stat. §§ 10-153b(e) and 153d, see West Hartford Education Association, Inc. v. DeCourcy, 162 Conn. 566, 295 A.2d 526 (1972); and not simply devices which give the CEA locals advantages in entrenching themselves as the majority unions, at the expense of the CFT locals. Cf. NLRB v. Magnavox Co. of Tennessee, 415 U.S. 322, 94 S.Ct. 1099, 39 L.Ed.2d 358 (1974); Board of School Directors of the City of Milwaukee v. Wisconsin Employment Relations Commission, 42 Wis.2d 637, 168 N.W.2d 92, 97 (1969) (both construing statutory provisions). See generally Notes, 49 Notre Dame Law. 1064 (1974) and 55 Cornell L.Rev. 1004 (1970).
 
 
 27
 We will not at present decide these constitutional questions on the merits, nor remand to the district court for an evidentiary hearing, since appellants' equal protection claims present an appropriate situation for abstention.
 
 
 28
 Abstention may be considered appropriate where there is a state law susceptible of an interpretation which would modify or avoid the federal constitutional issue, and resolution of the federal issue depends on the interpretation to be given the state law, see Lake Carriers' Ass'n v. MacMullen, 406 U.S. 498, 510-12, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); Askew v. Hargrave, 401 U.S. 476, 478, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971); Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Freda v. Lavine, 494 F.2d 107, 110 (2 Cir. 1974); Reid v. Board of Education of the City of New York, 453 F.2d 238, 241 (2 Cir. 1971); and the issue of state law is "uncertain" or "unclear," see Kusper v. Pontikes, 414 U.S. 51, 55, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973); Lake Carriers' Ass'n v. MacMullen, supra, 406 U.S. at 511, 92 S.Ct. 1749, quoting Harman v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); Reid v. Board of Education, supra, 453 F.2d at 242; H. Hart & H. Wechsler, The Federal Courts and the Federal System, 991-92 (P. Bator et al. eds. 1973). See McRedmond v. Wilson, 533 F.2d 757, 762 (2 Cir. 1976); C. Wright, Law of Federal Courts, § 52 (2d ed. 1970). In such a situation, the federal court properly may abstain from deciding the federal constitutional question, pending a definitive determination of the state law issue by a state tribunal. This course avoids unnecessary federal-state friction, and promotes the vital policy of judicial review that dictates against unnecessary or premature resolution of a federal constitutional question. See C. Wright, supra ; Railroad Commission of Texas v. Pullman Company, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Kusper v. Pontikes, supra, 414 U.S. at 54-55, 94 S.Ct. 303; Harman v. Forssenius, supra, 380 U.S. at 534, 85 S.Ct. 1177; Rosenberg v. Fleuti, 374 U.S. 449, 451, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963); Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944). See also Rolling Cloud, et al. v. Gill, et al., 412 F.Supp. 1085 (D.Conn., 1976).
 
 
 29
 Here, these requirements are satisfied. There is a state statute susceptible of interpretation by a Connecticut court so as to render decision of the federal constitutional questions posed unnecessary. Connecticut General Statutes § 10-153a, "Right to join professional organizations," states:
 
 
 30
 "Members of the teaching profession shall have the right to join or refuse to join any organization for professional or economic improvement free from interference, restraint, coercion or discriminatory practices by any employing board of education or administrative agents or representatives thereof."
 
 
 31
 Turning first to the contractual dues deduction provisions in force in Stratford, Bridgeport, Bloomfield, and Westport, and challenged by appellants, although § 10-153a does not on its face cover those provisions, the Fairfield County and New London County Superior Courts have interpreted the statute as rendering illegal similar dues deduction provisions. Norwalk Federation of Teachers v. Norwalk Teachers Association, No. 14-75-56 (Fairfield County Superior Ct., Mar. 5, 1973); Groton Federation of Classroom Teachers v. Groton Education Association, No. 04-27-50 (New London County Superior Ct., June 26, 1975).
 
 
 32
 Confronted with the specific facts of the instant case, a Connecticut court quite possibly will interpret § 10-153a to mean that, in entering into the challenged contract provisions, these state agencies[7] acted outside their authority, since the statute prohibits the boards from engaging in "interference, restraint, coercion or discriminatory practices." The case is thus quite similar to Pullman, supra, where the Supreme Court ruled that the federal courts should abstain from deciding the constitutionality, under the Fourteenth Amendment, of an order issued by the Texas Railroad Commission, pending a decision by Texas courts as to whether the Commission had authority under state law to issue the order. (See Reid v. Board of Education, supra, 453 F.2d at 241). Here, as there, a decision that the state agency acted outside its authority, under state law, would obviate the need to determine the constitutionality of the agency's action. This is, therefore, a case like Pullman, Reetz v. Bozanich, supra ; Askew v. Hargrave, supra and Reid v. Board of Education, supra, where plaintiffs have available a state law claim which is separate and distinct from the federal constitutional claim, but which, if resolved in their favor, "would make it wholly unnecessary to consider" the Fourteenth Amendment claims. Reid, supra, 453 F.2d at 242. (On the other hand, abstention, is generally inappropriate where the state-law right and the federal right are "as a practical matter coterminous." McRedmond v. Wilson, supra, at 763. See, e. g., Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); McNeese v. Board of Education, 373 U.S. 668, 672, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Reid, supra, 453 F.2d at 244.)
 
 
 33
 We cannot regard this issue of state law as "clear," despite the fact that the Superior Court has twice applied § 10-153a to claims similar to those at bar. First, certain of the contractual provisions involved here particularly the dues deduction "lock-in" were not involved in the earlier cases. More importantly, as a definitive exposition of state law, these two unreported decisions by trial courts of general jurisdictions are not binding on us. Cf. Commissioner v. Estate of Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); King v. Order of United Commercial Travelers of America,333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948); C. Wright, supra, § 58. These decisions were not necessarily binding on other Connecticut courts of coordinate jurisdiction.[8] Nor (putting to one side the fact that plaintiffs' complaint never alleges the state law claim, as pendent to the federal claims) do we think we should attempt a "forecast" on this potentially important issue of state law, one on which the Supreme Court of Connecticut has yet to speak. Cf. Pullman, supra, 312 U.S. at 500, 61 S.Ct. 643; Carey v. Bert Randolph Sugar and Wrestling Revue, Inc., --- U.S. ----, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976). Section 10-153a is a statute "particularly amenable to state court construction." Cordova v. Reed, 521 F.2d 621, 623-24 n. 1 (2 Cir. 1975); see also Harris County Commissioners Court v. Moore, 420 U.S. 77, 84, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975). The court in the Norwalk Federation of Teachers case noted, at page 5, that "(n)o other statute containing a similar prohibition in a comparable field of endeavor has been called to the court's attention." This court has recognized that educational matters can be particularly sensitive areas of state regulation. Compare Reid v. Board of Education with McRedmond v. Wilson, both supra. As Chief Judge Kaufman has emphasized for this court, "It is to everyone's advantage that decisions with respect to the operation of local schools be made by local officials." Eisner v. Stamford Board of Education, supra, 440 F.2d at 810. The Connecticut Teacher Negotiation Act embodies a careful and detailed expression of the public policy of the State of Connecticut concerning the economic relationship between the teaching profession and the boards of education, and its provisions are best interpreted by Connecticut courts.
 
 
 34
 With respect to appellants' mailbox, bulletin board, and meeting room claims (Hamden and Westport), it is not as easy to conclude that there is an "unclear" issue of state law which could render decision of the federal constitutional question unnecessary. This is not due to the absence of any state court decisions, such as Groton Federation of Classroom Teachers and Norwalk Federation of Teachers, applying § 10-153a to "mailbox" claims; it is due rather to the existence of Conn.Gen.Stat. §§ 10-153c and 153d. The former provides, in pertinent part: "Each organization shall have, during the election process, equal access to school mail boxes and facilities." (The "election process" occurs during October and November. Conn.Gen.Stat. § 10-153b(c), and (d).) The latter provides, also in pertinent part:
 
 
 35
 "(I)n the absence of any recognition or certification as the exclusive representative as provided by section 10-153b, all organizations seeking to represent members of the teaching profession shall be accorded equal treatment with respect to access to teachers, principals, members of the board of education, records, mail boxes and school facilities and participation in discussions with respect to salaries and other conditions of employment."
 
 
 36
 Thus the Connecticut Teacher Negotiation Act contemplates that during the time of the year most critical to the competition for membership and majority status, all unions shall have access to certain internal channels of communication;[9] and it at least implies that, during the remainder of the year, access to these facilities need be extended only to the majority union. As appellants themselves, in their brief, argue, however,
 
 
 37
 "(T)he cited statutes do not require the denial of equal communications facilities; they simply limit the insurance of equality to school systems which have no majority representative, and school systems in which an election campaign is in progress. Thus, these statutes provide guarantees which are narrower than those we claim the constitution requires. The statutes are not unconstitutional in themselves; the only impropriety is in reading them as if they required an inequality which they only fail to prohibit." (Emphasis in original.)
 
 
 38
 Since §§ 10-153c and 153d only prescribe equal treatment during the election process or where there is no exclusive bargaining agent, a Connecticut court quite possibly could construe § 10-153a as requiring equal access to mailboxes, bulletin boards, and meeting rooms at other times. That is, the denial of access to these facilities to a minority union, at any time, could be interpreted by the Connecticut court as "interference, restraint, coercion or discriminatory practices." At best, the implicit permission to deny equal access at certain times, which might be read into §§ 153c and 153d, is inconsistent with § 153a; the conflict requires resolution by a Connecticut court. Further, §§ 153c and 153d refer only to mailboxes and "school facilities." They do not explicitly mention the bulletin boards and meeting rooms which appellants seek to use. A state court must determine whether the statutory language "school facilities" covers bulletin boards and meeting rooms.
 
 
 39
 We, therefore, conclude that, on this second prong of appellants' equal protection claims, there is an "unclear" issue of state law which is susceptible of resolution so as to render unnecessary a decision on the federal constitutional question. And, the other considerations supporting abstention, mentioned in the discussion of the dues check-off claims, are equally applicable here. The state law right and the federal constitutional right involved are not "as a practical matter coterminous." The substantive state law issues are particularly appropriate matters for state-court determination; their ultimate resolution should not be "forecast" by this court. Further, considerations of efficient judicial administration require that all the claims raised by appellants in the equal protection part of their complaint be treated together, as opposed to a piecemeal litigation of the mailbox and dues deduction issues.
 
 
 40
 More generally, a state-court adjudication of whether the conduct of the defendant boards of education violates § 10-153a would be limited in its precedential effect to Connecticut. A federal court decision on appellants' constitutional claim, on the other hand, might have an impact on public employee-employer relations in other jurisdictions. In addition, the Supreme Court currently has before it a case which raises constitutional questions concerning dues check-offs in public employment, Local 660, International Association of Firefighters v. City of Charlotte, supra, which could be dispositive of at least some of the constitutional issues in the instant case.
 
 
 41
 Accordingly, we remand the case to the district court, with directions to vacate the judgment insofar as it pertains to the equal protection claims, and to dismiss these claims without prejudice pending plaintiffs' institution of an action seeking relief in the state court on state-law grounds.[10] Should plaintiffs be unsuccessful on their state claims, they may return to the federal forum to assert their federal constitutional claims. Harris County Commissioners Court v. Moore, supra, 420 U.S. at 88, n. 14, 95 S.Ct. 870. In that event the district court should conduct an evidentiary hearing and reconsider plaintiffs' equal protection claims in light of the constitutional principles stated in this opinion.
 
 
 42
 The judgment of the district court is affirmed as to the First Amendment claims.
 
 
 
 [1]
 The complaint originally contained a request for injunctive relief, but this has been dropped
 
 
 [2]
 Specifically, plaintiffs in their complaint object to the following policies and practices:
 "(a) Hamden The Superintendent on behalf of the Defendant Board Members is enforcing the following policy:
 School mailboxes are to be used for school business only.
 The bargaining agent can use faculty mailboxes at any time during the year.
 Groups other than the bargaining agent may use mailboxes for membership recruitment purposes during the period from September 1 through November 30.
 Bulletin board space is provided only for the official bargaining agent.
 Use of the school building after school for meeting purposes is available to the official bargaining agent. Other groups may apply for such use through Mr. Carusone.
 (c) Stratford By agreement between the Stratford Board of Education and the Stratford Education Association currently in effect, the Defendant Board Members agreed to the following provisions and are now enforcing them to the exclusion of the Plaintiff organization:
 'ARTICLE XXVI
 DUES DEDUCTION
 A. The Board agrees to deduct from teachers' salaries dues for the Stratford Education Association, The Connecticut Education Association, and the National Education Association, and to transmit all such monies promptly to the Stratford Education Association. Teacher authorizations shall be in writing . . ..
 D. Any teacher desiring to have the Board discontinue deductions he has previously authorized must notify the Board and the Association concerned in writing by September 20 of each year for that school year's dues.'
 (d) Bridgeport By contract between the Bridgeport Board of Education and the Bridgeport Education Association currently in effect, the Defendant Board Members agreed to the following provisions and are now enforcing them to the exclusion of the Plaintiff organization:
 L. Payroll Deductions
 All of the following deductions are subject to the capabilities of the computer.
 
 
 [1]
 In addition to those payroll deductions required by law the following agencies are eligible for payroll deductions. All requests for deductions must be in writing on approved authorization forms
 
 
 [2]
 A list of approved deductions is as follows:
 Washington National Insurance
 Bridgeport National Insurance Ed. Assoc.
 Connecticut Education Association
 National Education Association
 Tax Sheltered Annuity Plans (3)
 U.S. Savings Bonds . . . .
 
 
 [3]
 d. Payroll authorizations for Association dues shall be in full force and effect for so long as a teacher continues in the employ of the Board, but no longer than the duration of this Agreement. The Association agrees to indemnify, defend and hold the Board harmless for any action that might arise against the Board for compliance with dues deductions provisions of this Agreement.'
 (e) Bloomfield By contract between the Bloomfield Board of Education and the Bloomfield Education Association currently in effect, the Defendant Board Members agreed to the following provisions and are now enforcing them to the exclusion of the Plaintiff organization:
 'ARTICLE V
 DUES DEDUCTION
 A. The Board agrees to deduct from the salaries of its employees dues for the Bloomfield Education Association, Connecticut Education Association, and any other Board and teacher approved deductions as said employees individually and voluntarily authorize in writing to the Board to deduct, and to remit the monies monthly as they are deducted beginning with the first deduction to the designated Association, or Agency.'
 Further in administering its dues deduction policies said Defendant refuses to honor changes in authorization unless made thirty (30) days before the start of the school year.
 (f) Westport By contract between the Westport Board of Education and the Westport Education Association, currently in effect, the Defendant Board Members agreed to the following provisions and are now enforcing them to the exclusion of the Plaintiff organization:
 'Article XXII DUES DEDUCTION
 The Board of Education agrees, upon the voluntary written request from any certified employee submitted on a form approved by the Board, to deduct from that employee's salary dues for the Westport Education Association, Inc., the Connecticut Education Association and/or the National Education Association, and to transmit such monies so deducted at a time to be agreed upon between the Board and the Association, to the Westport Education Association, Inc. It is specifically understood and agreed that any such dues deduction is voluntary for any employee, that The Board shall be liable only for monies actually deducted from any individual's salary, and that once such monies are transmitted to the Westport Education Association, Inc., that Association shall save the Board harmless from any and all claims which may arise as a result of such dues deductions.'
 Further, said Defendants do not allow the Plaintiff organization to have access to mail boxes, bulletin boards or school facilities."
 
 
 [3]
 As plaintiffs' complaint properly alleges, the defendant school boards are "agencies of the state in charge of education in the town(s)." Herzig v. Board of Education, 152 Conn. 144, 150, 204 A.2d 827, 830 (1965). Accord, West Hartford Education Association, Inc. v. DeCourcy, 162 Conn. 566, 573, 295 A.2d 526 (1972)
 
 
 [4]
 These include Local 858, American Federation of Teachers v. School District No. 1 in the County of Denver, 314 F.Supp. 1069 (D.Colo.1970); Federation of Delaware Teachers v. De La Warr Board of Education, 335 F.Supp. 385 (D.Del.1971); Clark County Classroom Teachers Ass'n v. Clark County School District, 532 P.2d 1032 (Sup.Ct.Nev.1975); Bauch v. City of New York, 21 N.Y.2d 599, 289 N.Y.S.2d 951, 237 N.E.2d 211, cert. denied, 393 U.S. 834, 89 S.Ct. 108, 21 L.Ed.2d 105 (1968)
 
 
 [5]
 In citing Adderley and Pell v. Procunier, infra, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), we are aware that "a school is not like a hospital or a jail enclosure." Tinker, supra, 393 U.S. at 512 n. 6, 89 S.Ct. at 739
 
 
 [6]
 We do not view this analysis as necessarily inconsistent with the proposition that the school premises is the most effective place for teachers to communicate with each other. Friedman v. Union Free School District, 314 F.Supp. 223, 227 (E.D.N.Y.1970); cf. Healy v. James, 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972); Wolin v. Port of New York Authority, 392 F.2d 83, 90 (2 Cir.), cert. denied, 393 U.S. 940, 89 S.Ct. 290, 21 L.Ed.2d 275 (1968)
 
 
 [7]
 See note 2 supra
 
 
 [8]
 The New London County Superior Court, in its June, 1975, decision in the Groton Federation of Classroom Teachers case, did not cite the Fairfield County Superior Court's March, 1973, decision in Norwalk Federation of Teachers
 
 
 [9]
 Plaintiffs' complaint alleges that, in Hamden, "Groups other than the bargaining agent may use mailboxes for membership recruitment purposes during the period from September 1 through November 30." Thus, the Hamden school board is in compliance with the affirmative requirements of § 10-153c
 
 
 [10]
 Although plaintiffs will have to commence a new proceeding in state court, abstention does not depend on the pendency of a state court action. Freda v. Lavine, 494 F.2d 107, 110 (2 Cir. 1974); Reid v. Board of Education, supra, 453 F.2d at 243 n. 9