**UNIT B, KITTERY TEACHERS ASSOCIATION**

v.

**KITTERY SCHOOL COMMITTEE.**

Supreme Judicial Court of Maine.

April 16, 1980.

Argued Nov. 15, 1979.

Decided April 16, 1980.

Sunenblick, Fontaine & Reben by Howard T. Reben, orally, Portland, for plaintiff.

McEachern, Winiarski & Thornhill by Duncan A. McEachern, orally, Kittery, for defendant.

Before WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

GLASSMAN, Justice.

This is an appeal from a judgment of the Superior Court, York County, denying the defendant's Motion To Vacate Arbitration Award pursuant to 14 M.R.S.A. § 5938(1)(C) and affirming the award of the arbitration panel. The plaintiff-appellee, Unit B, Kittery Teachers Association (Association), is the duly authorized bargaining agent for principals within the Kittery public school system. The Association had entered into a collective bargaining agreement with the defendant-appellant, the Kittery School Committee (Committee). On behalf of J.

Mahlon Niles, Principal at Traip Academy, the Association sought arbitration of whether an evaluation by the Superintendent of Schools, Carl Wood, was "honest and fair" within the meaning of Article 14(C) of the agreement. After hearing, the majority of the arbitration panel concluded that the evaluation of Niles, considered as a whole, was not a "fair evaluation" and directed its removal from Niles' personnel file. The Superior Court affirmed this award. From the entry of judgment so providing, the Committee appeals, asserting (1) that the subject of evaluations was not arbitrable because not a grievance under the agreement and (2) that the relief granted by the arbitrators was in excess of their powers under the agreement. We affirm the judgment.

On January 10, 1978, Niles received a "Principal Evaluation" signed by Superintendent Wood and dated December 22, 1977. The evaluation was comprised of thirteen different performance categories that could be rated on a scale of one for good, two for fair, and three for poor. In seven of the thirteen categories, Niles' performance was evaluated as "one" or "one minus." In the remaining six, Niles' performance was evaluated as "two." A narrative evaluation for each category in which a "two" rating was received was attached to the evaluation form.

Dissatisfied with these ratings, Niles invoked the grievance procedures set forth in the bargaining agreement. He discussed the matter with Superintendent Wood and submitted a written rebuttal, as authorized by Article 14(C) of the agreement.[1] Because these procedures did not resolve the "grievance" to Niles' satisfaction, the Association, at Niles' request, submitted the issue to arbitration.

On August 9, 1978, the arbitration was held before a panel of three arbitrators.

---

1. Article 14 of the collective bargaining agreement, entitled "Position Descriptions and Evaluations," provides in Section C:

    Principals will be given an honest and fair evaluation by certified supervisory personnel in the Superintendency position of the school system. A principal will be given a written copy of any report or evaluation which may be prepared by his evaluator and may request a conference to discuss it, and offer written rebuttal.

The arbitration panel, upon analyzing the written evaluations and Superintendent Wood's oral testimony explaining the basis for the ratings, found that the evaluation as a whole was not "fair" as required by Article 14(C). Neither party challenges this finding on appeal. A majority of the arbitration panel ordered the "offending evaluation," as well as all materials related to the grievance, excised from Niles' personnel file.

Article 7 of the collective bargaining agreement, entitled "Personnel Files," reserved the right of the principal to review and rebut all nonconfidential materials placed in his file. The arbitrators interpreted this as *not* intended to limit their remedial powers, which they characterized as "plenary." The panel found that rebuttal was an inadequate remedy "where the evaluation as a whole fails to satisfy the contractual standard of 'honest and fair.'" In justifying its choice of remedy, the panel wrote:

> [A]lthough the contract does not specifically authorize the teacher to demand the removal of an unfair evaluation from his files, nor authorize an arbitration panel to order it removed, the teacher has the option of requesting its removal[2] and the arbitration panel has the power, in the appropriate case, to order its removal.
>
> . . .
>
> [A]rbitrators generally have plenary power to order any remedy appropriate to repair the contract breach, provided it does not contravene a specific provision of the contract.

The Committee timely filed a Motion To Vacate Arbitration Award, contending *inter alia* that the arbitrators exceeded their powers by finding that Niles' complaint was in fact a grievance under the terms of the agreement and by granting the relief of expungement. The Superior Court denied the Committee's motion because "the arbitrator[s'] opinion manifests a clear intention to interpret the language [of] the contract rather than modify the terms of the written agreement . . . ."

Before this Court, the Committee argues that an unfair evaluation is not arbitrable because the bargaining agreement provides the right of written rebuttal in Article 14(C). The Committee contends that by so providing the parties intended rebuttal to be the *exclusive* means to review the honesty and fairness of an evaluation, preempting arbitration.

■ In *Westbrook School Committee v. Westbrook Teachers Association*, Me., 404 A.2d 204, 207–08 (1979), we set forth the standard for determining the question of substantive arbitrability:

> [T]he Maine legislature's strong policy favoring arbitration dictates a conclusion that the dispute has been subjected to arbitration if the parties have generally agreed to arbitrate disputes and if "the party seeking arbitration is making a claim which, *on its face*, is governed by the collective bargaining contract." (Emphasis in original). *Lewiston Firefighters Association v. City of Lewiston*, [Me., 354 A.2d 154, 165 (1976)]. By an alternative formulation it has been held that a court will find a dispute arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers v. Warrior & Gulf Navigation Co.*, [363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)].

As in the *Westbrook School Committee* case, the agreement between the Committee and the Association includes a general agreement allowing a grievance to be submitted to arbitration if "not resolved to the

---

**2.** The arbitrators are here referring to Article 7 ("Personnel Files"), Section (A)(1):

> A Principal shall have the right to review the non-confidential contents of his Personnel File. A Principal shall have the right to indicate those documents and/or other materials in his file which he believes to be obsolete or otherwise inappropriate to retain. Such documents shall be reviewed by the Superintendent or his designee and *if in fact they are obsolete or otherwise inappropriate to retain, they shall be destroyed.* (Emphasis added).

principal's satisfaction" under the first three levels of the formal adjustment procedure. Article 3(B)(1) unequivocally provides: "A 'grievance' is any alleged violation of this agreement or any dispute with respect to its meaning or application." There is no express provision in the agreement that in any way limits the scope of applicability of this definition. The claim stated by the Association—that Niles' evaluation is not "honest and fair" within the meaning of Article 14(C)—appears on its face to be a grievance subject to the arbitration procedures of the agreement. This is sufficient to give the arbitration panel jurisdiction over the claim.

As its second point on appeal, the Committee argues that the arbitration panel exceeded its powers in ordering removal of the unfair evaluation from Niles' personnel file. The general rule governing review of an arbitrator's award provides:

> While a court will not substitute its judgment for that of an arbitrator, it will conclude that the arbitrator exceeded his powers by travelling outside the agreement, and will therefore refuse to enforce the arbitrator's award, if it finds no rational construction of the contract that can support the award. *Westbrook School Committee v. Westbrook Teachers Association, supra,* 404 A.2d at 209.

The standard of review to be employed by a court in determining whether the *remedy* fashioned by an arbitrator "travels outside the agreement" is whether the award " 'draws its essence from the collective bargaining agreement.' " *Id.* at n.9, *quoting United Steelworkers v. Enterprise Wheel & Car Co.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *see also Caribou Board of Education v. Caribou Teachers Association,* Me., 404 A.2d 212 (1979). Thus, it is not required that the remedy deemed appropriate to meet a particular situation be denominated as such in the collective bargaining agreement. If the remedy has been rationally derived from the agreement, it will be upheld. *Caribou Board of Education v. Caribou Teachers Association, supra.*

In the case before us, it is clear that the arbitration panel was interpreting and applying the contract when it ordered removal of the evaluation from Niles' personnel file. Article 7(A) provides that documents contained in a personnel file shall be destroyed "if in fact they are obsolete or otherwise inappropriate to retain . . ." A conclusion that it is "inappropriate to retain" an unfair evaluation in a personnel file draws its essence from the contract.

Although not raised in the Superior Court or in the briefs on appeal to this Court, at oral argument the Committee argued that the award infringed Superintendent Wood's first amendment right to free speech made applicable to the states through the fourteenth amendment to the United States Constitution. Because of the importance of the right asserted, we permitted the parties an opportunity to submit supplemental briefs. We conclude that the arbitration panel's award, ordering removal of the offending evaluation from Niles' personnel file, in no way infringes Superintendent Wood's first amendment right to free speech. We base this conclusion on the nonpublic nature of the personnel files themselves and on the alternative means of communication available to Wood for expression of his personal views. *See Connecticut State Federation of Teachers v. Board of Education Members,* 538 F.2d 471, 479 (2d Cir. 1976).

It is well established that first amendment principles apply only when a public forum for communication has been established. *See, e. g., Lehman v. City of Shaker Heights,* 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974); *Connecticut State Federation of Teachers v. Board of Education Members, supra,* 538 F.2d at 480–82; *Avins v. Rutgers, State University of New Jersey,* 385 F.2d 151 (3rd Cir.), *cert. denied,* 390 U.S. 920, 88 S.Ct. 855, 19 L.Ed.2d 982 (1968). No one alleges that the general public has access to these personnel files for the purpose of expression or communication. Indeed, the collective bargaining agreement itself reflects the highly confidential nature of the files by limiting the

access of a principal to his own file. Article 7 states that a principal will be given the opportunity to review only "the non-confidential contents of his Personnel File." It is thus apparent that Superintendent Wood's right to put material in the personnel files and the limitations on that right arise from his employment. Neither the Superintendent nor anyone else has a first amendment right to place written communications in Niles' personnel file. The ordered expungement does not restrict Superintendent Wood from otherwise disseminating or expressing his opinions. Under the circumstances here presented, there is no violation of the first amendment.

As to all issues but one the Court is unanimous and, since as to that one issue the Court is evenly divided, the judgment of the Superior Court must be affirmed. The entry is:

Appeal denied.

Judgment affirmed.

WERNICK, J., concurring.

GODFREY, Justice, with whom NICHOLS, Justice, concurs, concurring in part and dissenting in part:

For the reasons given by Justice Glassman, I agree that the arbitrators did not exceed their powers by finding Mr. Niles's complaint arbitrable under the collective bargaining agreement. I agree also that it was not intended that the remedies available to a principal for an unfair evaluation be confined to the conference or rebuttal expressly provided by Article 14(C). Furthermore, I must agree that the First Amendment does not apply, as a mandate of positive law, to prohibit the arbitrators from ordering expungement of the superintendent's evaluation from the principal's file. If expungement were explicitly provided by the bargaining agreement, nothing in the Constitution would directly bar its enforcement, although I would have other reservations about its validity in view of the provisions of 20 M.R.S.A. § 161, defining a superintendent's administrative responsibilities.

I must respectfully disagree, however, with the construction of this bargaining agreement that holds expungement to be within the arbitrators' remedial authority by implication from the agreement. Expungement of a superintendent's evaluation from the principal's file maintained by the superintendent ought to be regarded as a drastic remedy, and the arbitrators should not have been permitted to infer their authority to order it from any language contained in this bargaining agreement. Certainly such authority should not be inferred from the provisions of Article 7(A), giving a principal the right to indicate, and the superintendent the authority to mark for destruction, material in a principal's personnel file that the superintendent or his designee believes to be "otherwise inappropriate to retain".

That section of the agreement gives the principal the right to indicate such materials in his file as he believes to be obsolete or inappropriate to retain. The indicated materials are to be reviewed by the superintendent or his designee and "if in fact they are obsolete or otherwise inappropriate to retain, they shall be destroyed." In the context of Dr. Wood's general supervisory responsibilities under section 161 of the education law and of the specific responsibility, assigned to him by the Kittery School Committee, to evaluate all the principals in the Kittery School System, it was not a rational construction of the bargaining contract for the arbitrators to infer from Article 7 or any other provisions that they had authority to order removal of Dr. Wood's evaluation from the principal's official file maintained by Dr. Wood. This was a direct and unnecessary interference with Dr. Wood's performance of his assigned responsibilities, and it operated as an unnecessary prior restraint on the preparation of an official record.

Although arbitrators must have authority to fashion remedies that are supportable by a rational construction of the contract, in deciding whether their construction is "rational", it is necessary to look at the effect of the chosen remedy on the whole situa-

tion. The contract should not be deemed rationally to support a remedy that so plainly goes beyond what is needed to redress the complained-of grievance and, in doing so, interferes directly and unnecessarily with the performance of a legitimate function by one of the parties. Here, the Association's primary objective had been served, of having Dr. Wood's evaluation of Mr. Niles's performance as principal declared "unfair" by a board of arbitrators. For record purposes it sufficed to order that a copy of the arbitrators' decision be attached to Dr. Wood's evaluation and placed in Mr. Niles's file, to accompany Dr. Wood's evaluation at all times.

Arbitrators usually have, and should have, wide discretion in fashioning remedies for the redress of grievances under collective bargaining agreements. On reviewing the arbitrators' choice of remedy, the courts should ask only whether the choice is supported by a rational construction of the contract. But arbitrators should understand that in choosing among various possible effective remedies some of which do, and some of which do not, necessarily result in substantial interference with the legitimate operations of either party to the contract, "rational construction of the contract" requires the choice of a non-interfering remedy. Especially should this be understood by arbitrators in the public sector where, as here, the performance by public officials of their statutory responsibilities may be affected by the arbitrators' decision on remedy. The cause of grievance arbitration would be better served by such an approach to the question of remedy rather than by an approach that searches merely the provisions of the contract to determine whether the chosen remedy "draws its essence from the contract". Some of the interests affected by the remedy may not be evident in the contract.

There is an aspect of this case that makes the arbitrators' choice of remedy especially unfortunate. The fairness of an evaluation of a teacher or principal is highly dependent on the position from which that person's performance is perceived. The superintendent is the principal's immediate administrative superior in the sprawling governmental arrangements for public education. The superintendent's evaluation of the principal is unique in the system: neither students, nor parents, nor teachers, nor board members, nor outsiders have the same perspective as the superintendent on the principal's performance. No third person, including arbitrators after full hearing, can entirely appreciate the dynamics of that complex, on-going relationship.[1] While we accept on appeal the arbitrators' finding that the superintendent's evaluation of the principal, though basically "honest", was not "fair" within the meaning of the contract, we note in the arbitrators' opinion that even they had some reservations about certain aspects of the principal's performance. Their criticism of the evaluation was based on their conclusion that the factual evidence cited by Dr. Wood for his six evaluations of Mr. Niles's work in the "fair" category (as distinguished from his seven "good" ratings) did not support the numerical rankings. The report leaves the impression that the arbitrators surmised that at least some of the "fair" rankings might have been justifiable but that they had not been justified by the sketchy facts Dr. Wood supplied in his supporting memoranda or in his testimony at the hearing.

The effect of the arbitrators' order of expungement is that Superintendent Wood's evaluation of Mr. Niles's performance as principal is excised from Mr. Niles's

---

1. The arbitrators fully acknowledge this fact in their opinion, saying repeatedly that they cannot and will not substitute their judgment for that of Dr. Wood. *See* R. Blake & J. Moulton, *The Managerial Grid* 7 (1964):

     While every organization has hierarchy and while many organizations have job descriptions that depict an individual's responsibility under his hierarchical position, the problem of boss-subordinate relations is far more complex than can possibly be pictured by a job description. But the foundation for understanding management is in recognizing that a boss' actions are dictated by certain *assumptions* he makes regarding how supervision should be exercised. [Footnote omitted]

personnel file maintained by Dr. Wood as part of his official responsibilities. To whatever extent the contents of that file are made available through the years to the school committee with its frequently changing membership, to successive commissioners of education, and perhaps to prospective academic employers and colleagues of Mr. Niles, those persons will not have whatever benefit there may be in knowing what Superintendent Wood's uncoerced evaluation of Mr. Niles's performance really was, however unfair that evaluation may have seemed to the arbitrators.[2]

In such a situation, expungement operates, just as censorship or prior restraint operates in the public domain, to destroy certain possibilities for the communication of certain ideas. The fact that the number of persons is relatively small to whom the ideas may be expected to be communicated renders the suppression less pervasive in effect but does not render it any less objectionable in principle. Nothing within the four corners of the collective bargaining agreement justified a result so contrary to the spirit and purpose of the constitutional policy against prior restraint in the communication of ideas.

The judgment of the Superior Court should be modified to set aside the arbitrators' award as going beyond their authority insofar as it orders expungement of Superintendent Wood's evaluation. It would be within the arbitrators' remedial power to order a copy of their decision finding the evaluation unfair to be included with the superintendent's evaluation in the principal's file. The judgment should be modified accordingly.

---

2. Whatever may be "the alternative means of communication available to Wood for expression of his personal views" (Justice Glassman's opinion, at page 537, *supra*), they are not likely to include a mode of communicating to future holders of office in the educational system. The bargaining contract provided that no personnel records or files regarding principals may be maintained "separate from a single Personnel File."