718 F.2d 1417
 114 L.R.R.M. (BNA) 3112, 115 L.R.R.M. (BNA) 3085
 Frank BROWN, Silas Upchurch and Rufus Turner, Residents of
the United States and State of Tennessee and Local # 1308 of
the American Federation of State, County and Municipal
Employees; American Federation of State, County and
Municipal Employees, Local # 2173, Plaintiffs-Appellants,
Cross-Appellees,
v.
Lamar ALEXANDER, Governor of the State of Tennessee; Harold
Bradley, Commissioner of Corrections for the State of
Tennessee, and William Koch, Commissioner of the Department
of Personnel for State of Tennessee, Defendants-Appellees,
Cross-Appellants,
Tennessee State Employees Association, Party Defendant
Intervenor-Appellee, Cross-Appellant.
 Nos. 81-5594 to 81-5596.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 21, 1983.
Decided Oct. 6, 1983.
 
 George E. Barrett, Michael J. Passino, Barrett & Ray, Nashville, Tenn., for plaintiffs-appellants, cross-appellees.
 William M. Leech, Atty. Gen. of Tenn., Robert B. Littleton, Sp. Asst. Atty. Gen., Robert L. Ballow, R. Eddie Wayland, Nashville, Tenn., William P. Hutcheson, Chattanooga, Tenn., Charles Watson Cross (Tennessee State Empl. Assoc.), Cross, Stiles & Ozment, Nashville, Tenn., for defendants-appellees, cross-appellants.
 Before MARTIN and WELLFORD, Circuit Judges, and GILMORE,* District Judge.
 WELLFORD, Circuit Judge.
 
 
 1
 Three guards employed by the Tennessee State Prison at Nashville, Tennessee, and a labor union, of which they are members, Local 1308 of the American Federation of State, County and Municipal Employees (AFSCME), brought suit in the United States District Court for the Middle District of Tennessee in August of 1979 for both declaratory and injunctive relief, challenging in their suit the constitutionality of a Tennessee statute which purports to deprive the original plaintiffs of the payroll deductions from their state salaries to Local 1308 for union dues. The act challenged was Chapter 143, Sec. 1 of the Acts of 1977, which was amended and reads as follows (the amended act is in question in this proceeding):
 
 
 2
 [ (a) ] Officers and employees of the state may authorize deductions to be made from their compensation for the payment of membership dues in any employee associations or organizations that meet all of the following criteria:
 
 
 3
 (1) Grants membership to all regular employees in the Executive Branch of state government who seek membership regardless of title, position, location, or department.
 
 
 4
 (2) Grants the same rights and privileges of membership to all employees who seek membership therein.
 
 
 5
 (3) Provides the same kind and degree of services to all members regardless of rank, position, title, or location within Tennessee.
 
 
 6
 (4) Has at least twenty percent (20%) of the employees in the Executive Branch of state government as members.
 
 
 7
 (5) Has as one of its objectives the promotion of an efficient and effective work force for state government in Tennessee, and if affiliated in any manner with another organization, the other organization shall have similar objectives.
 
 
 8
 (6) Is an independent employee organization including, but not limited to, those who are not required to have their charter or by-laws approved by a parent or affiliate, can not be required to merge with another employee organization or unit, can not have its membership dues established by an affiliate or parent, can not be taken control of by a parent, affiliate or other labor organization for any reason whatsoever.
 
 
 9
 (7) Is itself a wholly domestic employee organization which is not a part of a multistate employee organization which controls it or has any right of control.
 
 
 10
 [ (b) ] The chief administrative officer of any organization seeking deduction and payment of dues must certify initially and annually to the Department of Finance and Administration that it meets each separate requirement set forth in [subsection (a) ]. The procedure for payroll deduction shall be in accordance with procedures established by the Department of Personnel and the Department of Finance and Administration. The Commissioner of Finance and Administration shall have no authority to deduct and pay over membership dues to any organization except as provided herein.
 
 
 11
 Act of Mar. 27, ch. 792, 1980 Tenn.Pub. Acts 911 (current version at Tenn.Code Ann. Sec. 8-23-204 (Supp.1982)) [hereinafter cited as TCA Sec. 8-23-204].
 
 
 12
 Local 2173 intervened as plaintiffs in this suit challenging the constitutionality of this statute. Defendants in the suit, which involves allegations of violation of first, fourth and fourteenth amendment rights, are the Tennessee Governor, its Commissioner of Correction, the Commissioner of Personnel and the Tennessee State Employees Association (TSEA).[1] As stated by the district court judge in his opinion which is published at 516 F.Supp. 607 (M.D.Tenn.1981), "[p]laintiffs' basic quarrel is with the effect of Tenn.Code Ann. Sec. 8-23-204, which deprives them and their unions of the benefit of payroll deductions for union dues." Id. at 610. The decision of the district court, which is the subject of this appeal, pertained to the amended 1980 version of the law, which the district judge ruled retained "the substance and most objectionable portions of the earlier statute." Id. at 610-11.
 
 
 13
 As background to this dispute, prior to 1977 Local 150-T, a union representing mental health state employees, had sought to enforce in Tennessee state courts a memorandum of understanding with the State of Tennessee, which provided that union dues were to be deducted from members' pay checks. The Tennessee Chancellor refused to grant that union relief but did not address the constitutional issues raised in this case. Plaintiffs in that action contended that another local union, not a party to this proceeding, had been the beneficiary of a dues checkoff arrangement before 1977.
 
 
 14
 In any event, for the first time in 1977, the Tennessee General Assembly enacted the predecessor to the statute in dispute, which, in effect, provided for a dues checkoff for organizations representing state employees but only if the organization was (1) independent, (2) domestic, (3) committed to achieving an efficient and effective work force in Tennessee, and (4) representative of at least ten percent of the employees who qualified for membership. This Act exempted from its requirements all unions having lawful agreements with the State prior to July 1, 1977.
 
 
 15
 The Tennessee Attorney General's office issued an interpretative opinion in 1978 to the effect that the 1977 legislation was not intended to apply to all types of labor organizations but rather to the Tennessee State Employee Association (TSEA), which was not considered to be a labor union as such, in discussions during Senate debates on the bill. The Tennessee Department of Corrections refused to provide payroll deductions for the AFSCME Local 2173, and this suit resulted. Apparently concerned with the district judge's issuance of a temporary restraining order prohibiting enforcement of portions of the 1979 Act, the legislature subsequently amended the Act.
 
 
 16
 Subsections (5), (6) and (7) of section one of TCA Sec. 8-23-204 were deemed to be unconstitutional by Judge Wiseman, who ruled, however, that these sections were severable, and the balance of the statute was held to pass constitutional muster. The trial court ruled that plaintiffs had standing to challenge the act, and struck down the "promotion of an efficient and effective work force for state government" condition (subsection 5), the "independent employee organization" condition (subsection 6), and the "wholly domestic employee organization" condition (subsection 7) on grounds that they violated the fourteenth amendment equal protection requirements. He found no direct first amendment violation, however, in any part of the law in question. In this appeal and cross-appeal TSEA, an intervening defendant, and the State of Tennessee challenge the trial court's action in striking the aforementioned three sections, while plaintiffs seek to have the entire statute declared unconstitutional.
 
 
 17
 Only TSEA, as noted by the district court, has been "accorded the privilege of a dues checkoff" under the statute in question. 516 F.Supp. at 610. This "disparate treatment," or favored status of TSEA, was the basis on which Judge Wiseman set aside portion of the law. Id. at 610.
 
 STANDING
 
 18
 Plaintiffs' standing to bring this action and to seek the relief of striking down the statute is first challenged. Local 2173 had allegedly enjoyed some kind of de facto dues checkoff status prior to enactment of the statute. After the law became effective, it no longer enjoyed this benefit alleged to be a vital one, because of the numerosity condition imposed ("20% of the employees in the executive branch of state"). Local 1308 takes the position that this minimum 20% requirement makes it unlikely that it will ever attain the dues checkoff. Defendants take the position that since neither of these local unions even attempt to meet the unchallenged criteria of section 1, subsections (1)-(3), inclusive, they are in no position to challenge the 20% requirement of subsection (4). These subsections (1)-(3) relate to an organization's granting membership to "all regular employees in the Executive Branch of state government" (subsection 1), granting the "same rights and privileges of membership to all employees who seek membership" (subsection 2), and providing "the same kind ... of services to all members regardless of ... position" (subsection 3). The state defendants argue that since local 1308 and 2173 confine their membership to only certain state employees at particular institutions, or in a particular department, they cannot meet the requirements of the first three subsections, which are not challenged as unconstitutional. We agree with the district court on the issue of standing, however, that plaintiffs challenge a statute that allegedly causes them direct injury, and that challenge, if successful, may redress the asserted injury. Plaintiffs, moreover, challenge the entire statute in controversy as discriminatorily favoring only one employee association. Standing of plaintiffs is satisfied under the rationale of Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), and Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977), because plaintiffs challenge that part of the statute also that imposes a percentage or numerosity requirement, as well as other sections dealing with independence and affiliation with out-of-state labor organizations.
 
 FIRST AMENDMENT CONSIDERATIONS
 
 19
 The District Court held that the statute withstood plaintiffs' first amendment challenge after making an analysis under Healy v. James, 408 U.S. 169, 92 S.Ct. 2332, 33 L.Ed.2d 266 (1972). The trial judge reasoned that the statute confers a benefit, payroll deduction, for one group, but not the plaintiffs, rather than denying recognition as in Healy. He held that even if denial of a benefit burdened plaintiffs, such a burden in the form of "impairing the effectiveness" of plaintiff local unions was constitutionally permissible under Smith v. Arkansas State Highway Employees, 441 U.S. 463, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979).
 
 
 20
 Smith held that the first amendment rights of association and advocacy protected individual state employees in their right to form an association and to advocate policies that would be beneficial to them. The first amendment did not, however, entitle public employees' unions to exclusive bargaining rights or even recognition.
 
 
 21
 The public employee surely can associate and speak freely and petition openly, and he is protected by the First Amendment from retaliation for doing so. See Pickering v. Board of Education, 391 U.S. 563, 574-575 [88 S.Ct. 1731, 1737-38, 20 L.Ed.2d 811] (1968); Shelton v. Tucker, 364 U.S. 479 [81 S.Ct. 247, 5 L.Ed.2d 231] (1960). But the First Amendment does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize the association and bargain with it.
 
 
 22
 441 U.S. at 465, 99 S.Ct. at 1828.
 
 
 23
 The Supreme Court noted also that "there is no constitutional duty to bargain collectively with an exclusive bargaining agent" insofar as public employees are concerned. Smith, 441 U.S. at 465 n. 2, 99 S.Ct. at 1828 n. 2 (quoting Indianapolis Educ. Ass'n v. Lewallen, 72 L.R.R.M. 2071, 2072 (7th Cir.1969)). See also Hanover Township Fed. of Teachers v. Hanover Community School Corp., 457 F.2d 456, 461 (7th Cir.1972). It was pointed out by this court in Memphis Am. Fed. of Teachers v. Board of Education, 534 F.2d 699, 702 (6th Cir.1976), that "[i]n the absence of any attempt ... to restrict the content or subject matter of speech," there has been "no substantive abridgement of First Amendment rights." See also Arkansas State Highway Employees v. Kell, 628 F.2d 1099, 1102 (8th Cir.1980). There is no allegation of any attempt to restrict the right to associate together or to form an employees organization in this case; nor has there been an allegation of retaliation against plaintiffs or others for joining a particular union. "[T]he First Amendment does not impose any duty on a public employer to affirmatively assist, or even to recognize a union." Kell, 628 F.2d at 1102. See also Local 995 v. City of Richmond, 415 F.Supp. 325, 326 (E.D.Va.1976).
 
 
 24
 While we agree with the district judge in his first amendment analysis, at the same time, we acknowledge that first amendment protections extend to labor union activities and the right of employees to associate together as a labor organization. Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945); Connecticut State Fed. of Teachers v. Board of Educ. Members, 538 F.2d 471, 478 (2d Cir.1976).
 
 
 25
 The preamble to TCA Sec. 8-23-204 sets out the purposes of the law:
 
 
 26
 AN ACT to authorize payroll deductions from the compensation of officers and employees of the state for payment of membership dues in certain employee associations.
 
 
 27
 BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:
 
 
 28
 WHEREAS, it is in the interest of the Citizens of Tennessee to provide payroll deductions for employee organizations that have as an objective the promotion of an effective and efficient work force in state government; and
 
 
 29
 WHEREAS, it is, therefore, desirable to favor employee organizations which are considered large enough to promote employee stability and peace rather than favor numerous or small quarrelling employee organizations; and
 
 
 30
 WHEREAS, it is also desirable to favor employee organizations whose roots are in Tennessee; who are not subject to control by an organization whose members do not pay taxes in Tennessee and whose interests do not match those of Tennessee State government; and
 
 
 31
 WHEREAS, it is desirable to favor employee organizations that grant memberships to all state employees with equal rights and privileges as opposed to those employee organizations which stratify and segment the work force, now therefore, BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:
 
 
 32
 SECTION 1. Officers and employees of the state may authorize deductions to be made from their compensation for the payment of membership dues in any employee associations or organizations that meet all of the following criteria....
 
 
 33
 1980 Tenn.Pub. Acts 911, 911-12. The reasons given for giving special recognition to organizations that seek to promote an effective and efficient state work force and meet other standards set out in the preamble seem apparent, and it is clear that the legislature seeks to favor any organization that meets these standards. Plaintiffs seek to distinguish Smith on the basis that it "related only to an asserted first amendment right in the abstract" (Brief of Plaintiffs, at 13). The trouble with the preceding argument is that the first amendment claim in Smith related to the Union's right to file grievances, which is not dissimilar to the union's right in this case to seek a dues checkoff. The court in Smith construed the first amendment right involved in that case to address the rights to "speak freely, to advocate ideas, to associate with others, and to petition ... for redress of grievances." 441 U.S. at 464, 99 S.Ct. at 1827. None of these essential first amendment rights were held to be involved or violated in a state's refusing to deal with a union's attempt to handle member grievances. "[T]he First Amendment is not a substitute for the national labor relations laws." Id.
 
 
 34
 Carey v. Brown, 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980), relied upon by plaintiffs in support of their first amendment argument, dealt with an ordinance restricting picketing, and the court there held:
 
 
 35
 government must afford all points of view an equal opportunity to be heard. Once a forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say.
 
 
 36
 447 U.S. at 463, 100 S.Ct. at 2291 (quoting Police Dep't v. Mosley, 408 U.S. 92, 95-96, 92 S.Ct. 2286, 2289-90, 33 L.Ed.2d 212 (1972)). The issue in this case, however, is not that the State of Tennessee by this law excludes plaintiffs from organizational activities or from associating together; nor is it claimed that through this law Tennessee denies plaintiffs an opportunity to be heard on an equal basis with TSEA; rather the complaint is directed towards permitting TSEA, which meets certain conditions, to a dues checkoff, in contrast to plaintiffs who do not meet these same conditions. The real contention in this case, then, is not that the State through the law in controversy denies plaintiffs the right to speak, or to advocate, or to associate, or to petition to redress grievances, or to picket; rather it is that the law enables the state to differentiate between plaintiffs and other labor associations if either meets certain conditions and the other does not as to a dues checkoff privilege.
 
 
 37
 We find Smith v. Arkansas State Highway Employees dispositive of the plaintiffs' first amendment claim, that the state may condition the privilege of union dues checkoff upon an organization's meeting certain requirements without violating the first amendment. Local 858 AFT v. School Dist., 314 F.Supp. 1069 (D.Colo.1970); Federation of Del. Teachers v. De La Warr Bd. of Education, 335 F.Supp. 385 (D.C.Del.1971). See Buckley v. Valeo, 424 U.S. 1, 92-93, 96 S.Ct. 612, 669-70, 46 L.Ed.2d 659 (1976). See also Regan v. Taxation with Representation of Washington, --- U.S. ----, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983). We agree with the district court that this statute neither on its face nor in its effect deprives plaintiffs of first amendment protections of free speech, advocacy, and association.
 
 EQUAL PROTECTION
 
 38
 We have held that the statute as a whole does not preclude plaintiffs' exercise of free speech and association, as such. However, we agree with the district court that we must also consider whether there is an equal protection violation in the exercise of first amendment or other constitutional rights by virtue of TCA Sec. 8-23-204. The "[p]laintiffs have no fundamental right to a dues checkoff." 516 F.Supp. at 617. Nonetheless, the state must demonstrate a rational basis for distinguishing between employee organizations in granting the valuable privilege of dues checkoff.
 
 
 39
 1. Subsection 4 (Twenty Per Cent of Employees Requirement):
 
 
 40
 In McGowan v. Maryland, 366 U.S. 420, 425-26, 81 S.Ct. 1101, 1104-05, 6 L.Ed.2d 393 (1961), the Supreme Court outlined the appropriate scope of judicial review under a rational basis test:
 
 
 41
 Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.
 
 
 42
 This standard has been affirmed in later Supreme Court cases dealing with fourteenth amendment equal protection challenges. See Vance v. Bradley, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); Hughes v. Alexandria Scrap Corp., 426 U.S. 794, 813, 96 S.Ct. 2488, 2499, 49 L.Ed.2d 220 (1976); City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).
 
 
 43
 Many cases have held that a state or city may favor one employee organization over another that has attained some official status, or has met some prescribed conditions imposed, despite an equal protection challenge by a union claiming discriminatory treatment. Local 858 AFT v. School Dist., supra; Federation of Del. Teachers v. De La Warr Bd. of Education, supra; Connecticut State Fed. of Teachers v. Board of Educ. Members, supra; Perry Educ. Association v. Perry Local, --- U.S. ----, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). "[T]here is no constitutional duty to bargain collectively [even] with an exclusive bargaining agent." Hanover Twp. Fed. of Teachers v. Hanover Community School Corp., 457 F.2d 456, 461 (7th Cir.1972) (decision of now-Justice Stevens).
 
 
 44
 These cases as well as Memphis AFT, supra, have recognized that a labor association or organization chosen by a majority of employees may lawfully and constitutionally enjoy a status, as to check-off or other privileges, that other organizations may not enjoy. There is a recognized rational basis for such a public policy to avoid inter-union disputes and labor discord in a public employee forum. Memphis AFT, 534 F.2d at 703.
 
 
 45
 The numerosity or twenty-percent requirement imposed by subsection is accordingly deemed not to offend first amendment or fourteenth amendment standards. We agree with the district court that
 
 
 46
 [i]t is not unreasonable for legislators to believe that requiring twenty percent of all employees to belong to an organization before conferring the checkoff upon the organization will promote labor peace by diminishing the number of quarrelling unions.
 
 
 47
 516 F.Supp. at 619.
 
 
 48
 2. Subsection 5 (Efficient and Effective Work Force):
 
 
 49
 The state must also demonstrate a rational basis for conditioning the dues checkoff on an organizational goal of promoting "an efficient and effective work force for state government in Tennessee." TCA Sec. 8-23-204(a)(5).
 
 
 50
 [I]t cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.
 
 
 51
 Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).
 
 
 52
 If the state may regulate reasonably the speech of state employees in a different manner than it can ordinary citizens, and if a state may restrict partisan political employee activities, in a different manner than it can restrict ordinary citizens, then may it also require public employee associations, in order to gain a checkoff benefit, to promote an efficient and effective work force? See Pickering, supra; United States Civil Service Commission v. National Association of Letter Carriers, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). The latter authority deemed limitation of otherwise constitutional activity, including freedom of speech, to be appropriate, despite first amendment concerns, to "reduce the hazards to fair and effective government." 413 U.S. at 565, 93 S.Ct. at 2890 (emphasis added). The federal Civil Service Act (Lloyd-LaFollette Act)[2] has long provided that federal employees may not be discharged "except for such cause as will promote the efficiency of said service." (Emphasis added.) The corollary to this standard is that an employee whose work and activity does not promote the efficiency of the federal service may be discharged if procedural requirements are met. That standard was approved in Arnett v. Kennedy, 416 U.S. 134, 160, 94 S.Ct. 1633, 1647, 40 L.Ed.2d 15 (1974), when it was challenged as overly broad and violative of the first amendment. To require simply that an organization, to qualify for checkoff benefits, must have as "one of its objectives" promoting an efficient and effective work force, and that any affiliated employee association have a similar objective, would not violate fourteenth amendment standards in our view. This does not constitute content or subject matter speech prohibition nor denial of a forum as proscribed in a picketing ordinance context in Police Dep't v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972), or Carey v. Brown, 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980), as contended by plaintiffs. After careful scrutiny of the statute, we find there to be a rational basis bearing a relationship to legitimate state purposes for subsection 5, and that subsection 5 is not violative of plaintiffs' constitutional rights. The preamble to the Union's constitution emphasizes exercise of both rights and responsibilities of citizenship; it is not clear that the locals may not themselves meet the subsection 5 requirements despite the letter of potential disqualification noted by the trial judge. 516 F.Supp. at 616. This subsection (5) standard, applicable to whether a public employer would allow a checkoff or not, involves only a standard of reasonableness and reasonable is evaluated "with 'some basis in practical experience.' " City of Charlotte v. Local 660, 426 U.S. 283, 287, 96 S.Ct. 2036, 2039, 48 L.Ed.2d 636 (1976) (quoting South Carolina v. Katzenbach, 383 U.S. 301, 331, 86 S.Ct. 803, 820, 15 L.Ed.2d 769 (1966)).
 
 
 53
 In a related aspect of this standard, it has been held that to undermine, rather than to "promote, the effective performance" of a public official's job was an important determination in deciding constitutionality of a political discharge. See Branti v. Finkel, 445 U.S. 507, 518-19, 100 S.Ct. 1287, 1294-95, 63 L.Ed.2d 574 (1980). We find that the statute requiring promotion of an efficient and effective work force in order for labor associations to qualify for dues checkoff is not unconstitutional.
 
 
 54
 Unlike other provisions of the Constitution, the Equal Protection Clause confers no substantive rights and creates no substantive liberties. The function of the Equal Protection Clause, rather, is simply to measure the validity of classifications created by state laws.
 
 
 55
 San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 59, 93 S.Ct. 1278, 1310, 36 L.Ed.2d 16 (1973) (Stewart, J., Concurring). Further, we find that the statutory language used in this subsection is not so vague and indefinite that it should be construed to be unconstitutional on equal protection grounds.
 
 
 56
 3. Subsection 6 (Independent Employee Organization):
 
 
 57
 This subsection deals with and proscribes a labor organization's affiliation with another such organization if it is to be given checkoff benefits. The issue here is whether this requirement must be analyzed under the rational basis standard, or whether strict scrutiny must be applied.
 
 
 58
 An "affiliate" in an organization is defined for some purposes as an associate. To be affiliated with a group or organization is to be associated with, attached to, or identified with that organization. We believe this subsection directly limits freedom of association between labor organizations, and their members or members of other such organizations, and thus it could restrain or restrict freedom of association, a fundamental first amendment right. The advocacy of particular policies and practices of parent or affiliated organizations may well be directly affected by this limitation, and thus it requires strict scrutiny; equal protection concerns in this respect are related to the first amendment rights asserted by plaintiffs. See NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958); Gibson v. Florida Legislative Investigation Comm., 372 U.S. 539, 549, 83 S.Ct. 889, 895, 9 L.Ed.2d 929 (1963).
 
 
 59
 We have considered in this same context the conditions set out in subsections (4) and (5) and have found no explicit prohibition or discrimination which has directly and adversely impacted upon freedom of speech, of advocacy, of association or to petition. If the same rational basis test were applied to subsection (6) as was applied to the preceding sections, we would likely find some "state of facts [that] reasonably may be conceived to justify" the subsection (6) standards. McGowan, 366 U.S. at 426, 81 S.Ct. at 1105. However, the requirement that an organization be "independent" and non-affiliated with another labor organization strikes at the heart of freedom of association. Therefore we construe subsection (6) to require stricter scrutiny, that the state demonstrate a compelling interest to justify the limitation. First National Bank of Boston v. Bellotti, 435 U.S. 765, 795, 98 S.Ct. 1407, 1426, 55 L.Ed.2d 707 (1978).
 
 
 60
 The preamble to the statute mentions that it was the legislative purpose to favor local employee organizations (those "whose roots are in Tennessee," and that "are not subject to control by an organization ... whose interests do not match those of Tennessee State government"). It is difficult to see a compelling interest in these aims that would be furthered by subsection (6) language restricting dues checkoff to those associations that are "independent," that are not required to have "charter or by-laws approved by a parent or affiliate" or "dues established by an affiliate or ... cannot be taken control of by a parent, affiliate or other labor organization." A labor association which otherwise had "similar objectives" to the state (those described in subsection (5)) merging with or becoming affiliated with another labor organization in Tennessee, which held to those same objectives ("promotion of an efficient and effective work force"), would not harm the State of Tennessee. The proscription of subsection (6) in such an instance is too broad, too all encompassing, to accomplish reasonably the desired end expressed in the preamble and also apparently inconsistent with the language of subsection (5).
 
 
 61
 In his brief, the State Deputy Attorney General argues that subsection (6) "simply provides that a qualifying organization must be free from outside domination or control."[3] This subsection, however, does not "simply" say what the State of Tennessee counsel advocates. Whether a merger with another state organization, otherwise qualified, would mean being "taken control of" is not clear, nor is it clear as to the relevance of establishment of membership dues by an affiliate or parent to the purported desire of maintaining "independence" of an employee or organization.[4]
 
 
 62
 We are therefore constrained to hold that under the strict scrutiny standard involved, subsection (6) violates plaintiffs' first amendment rights.
 
 
 63
 4. Subsection 7 (Wholly Domestic Requirement):
 
 
 64
 Subsection (7) requires that a qualifying employee organization be domestic, with a prerequisite that it be free from the control of another "multistate" entity. TCA Sec. 8-23-204(a)(7).
 
 
 65
 This subsection is related to subsection (6) which, we have determined, does not survive strict scrutiny. The issue here is whether a requirement that a qualifying association be local or domestic offends equal protection standards. We do not find our disposition as to the constitutionality of subsection (6) to be controlling as to that of subsection (7). The State and the TSEA maintain that it is permissible for the State (or a municipality) to favor its own residents, employees or organizations. Residency requirements and classifications have been upheld by the courts on a number of occasions in the face of equal protection challenges. Detroit Police Officers Ass'n v. City of Detroit, 385 Mich. 519, 190 N.W.2d 97, appeal dismissed for want of substantial federal question, 405 U.S. 950, 92 S.Ct. 1173, 31 L.Ed.2d 227 (1972);[5] Wright v. City of Jackson, 506 F.2d 900 (5th Cir.1975); Wardwell v. Board of Education of Cincinnati, 529 F.2d 625 (6th Cir.1976); Krzewinski v. Kugler, 338 F.Supp. 492 (D.N.J.1972) (three-judge panel). Krzewinski clearly upheld a "domestic" requirement for local resident policemen and firemen in New Jersey, even under a compelling state interest standard. Id. at 498-501. The compelling state interest found in that case was "identity with the community," and this was sufficient to justify a local residence requirement in order to obtain or keep a public employee position. The requirement imposed in Krzewinski, then, was a more substantial one than is involved in the instant case, because failure to comply with the domestic or residency requirement meant loss of a job, not just a loss of potential checkoff privilege.
 
 
 66
 This same kind of classification favoring state or local persons over out of state competitors was recently sustained by the Supreme Court in a commerce clause context in Reeves, Inc. v. Stake, 447 U.S. 429, 100 S.Ct. 2271, 65 L.Ed.2d 244 (1980). The Court observed that
 
 
 67
 [s]uch policies, while perhaps "protectionist" in a loose sense, reflect the essential and patently unobjectionable purpose of state government--to serve the citizens of the State.
 
 
 68
 Id. at 442, 100 S.Ct. at 2280. Cf. Hughes v. Alexandria Scrap Corp., 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976).
 
 
 69
 Thus, even if there is involved a condition favoring local organizations over multi-state employee organizations which imposes some limitation on the freedom of travel or association, this kind of limitation serves a natural and compelling state interest. It does not in our view limit the fundamental freedom of speech, communication or advocacy components of the first amendment as they relate to plaintiffs' equal protection challenge. See Hooban v. Boling, 503 F.2d 648 (6th Cir.1974), which recognized a legitimate state interest in favoring state residents over non-residents in a state university admissions fee context.
 
 
 70
 Gay Lib v. University of Missouri, 558 F.2d 848 (8th Cir.1977), cert. denied, 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 789 (1978), and University of Missouri v. Dalton, 456 F.Supp. 985 (W.D.Mo.1978), the district court found persuasive in construing subsections (6) and (7) to be unconstitutional. The latter case involved denial of one faculty group's use of university facilities because of advocacy of certain views on collective bargaining. The geographic distinctions drawn by Tennessee in this case, however, do not preclude advocacy or speech on any substantive issue. We therefore do not find Dalton to be a basis for striking subsection (7) for its impact on equal protection and/or implicated first amendment rights. Gay Lib, similarly, involved denial of a particular group's use of university facilities and refusal to recognize Gay Lib as a campus organization. A divided court there held that this State's action was, in effect, an invocation of censorship because of controversial views of the organization which challenged and sought to change Missouri's criminal laws on sexual conduct. 558 F.2d at 857. Again, we do not construe subsection (7) favoring domestic associations in granting a right of dues checkoff as equivalent to censorship in the context of a labor relations controversy. While our ruling on subsection (6) has the effect of setting aside a restriction which we construe as having a direct impact on the right of association or affiliation, subsection (7) is related to a rational and well recognized state interest, to bestow a benefit on a state or domestic organization which may be denied to a non-domestic one. There is no restriction on the freedom of speech or association.
 
 
 71
 Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), also cited by the district court in holding subsection (7) unconstitutional, involved a one-year waiting period for welfare claimants, based upon continuous residency in a particular state jurisdiction. The Supreme Court held in Shapiro that one-year residency requirement to impose an unconstitutional burden upon the right-to-travel. See also Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), dealing with a term of residency requirement on voting rights. These cases deal with an absolute denial of what were deemed fundamental constitutional rights by imposing an unreasonable term of residency. They involve, in our view, a different principle from favoring a domestic state organization over a foreign organization with respect to a dues checkoff benefit. We conclude that subsection (7) complies with constitutional requirements.
 
 
 72
 While plaintiffs make their basic arguments to strike the statute as unconstitutional against subsection (4) through (7), they contend that the entire statute discriminates in favor of TSEA, which purports to
 
 
 73
 (1) grant membership to all regular state employees in the executive branch (in contrast to the more parochial and limited organizational structure of plaintiff local unions);
 
 
 74
 (2) grant the same rights of membership to all; and
 
 
 75
 (3) provide the same type of services to all members regardless of their classification as state employees.
 
 
 76
 Plaintiff unions, however, do not seriously contend that they might not meet the qualifications set out in these three subsections. Plaintiffs, whether individuals or local unions, have not specifically charged that these standards are irrational, or that the state does not have a reasonable interest in dealing with few rather than many fragmented employee organizations representing different locations, divisions or units of state government. These subsections then should not be stricken unless the entire act is deemed to be constitutionally deficient.
 
 OTHER SUBSECTIONS
 
 77
 Plaintiffs in their brief seek to set aside as unconstitutional TCA 8-23-204 in its entirety, and do not limit the challenge to subsection (4)-(7) inclusive, which have been previously discussed in detail. They claim that the purpose and effect of the statute is very clear--to authorize discrimination in favor of TSEA in dues checkoff--and that all subsections are so interwoven in accomplishing this unlawful end that to set aside one subsection as unconstitutional requires striking the entire statute. Section (4) of the statute provides:
 
 
 78
 If any part, phrase, clause, section or sentence of this Act is found to be unconstitutional, all remaining parts of the act shall remain in effect there being a legislative intent that each part, phrase, clause or sentence shall stand alone with a separate purpose and reason for enactment.
 
 
 79
 As noted by the district court, Tennessee also has a general severability statute (TCA 1-3-110) that would save Tennessee laws, otherwise constitutional, if one portion were stricken by a court as invalid or unconstitutional.
 
 
 80
 This circuit has dealt with the principles of severability and elision under Tennessee law in Moore v. Fowinkle, 512 F.2d 629 (6th Cir.1975).
 
 
 81
 When a statute contains one or more unconstitutional provisions, the obnoxious provisions will be eliminated and the statute sustained as to the rest, unless the invalid provisions are deemed so essential, and are so interwoven with others, that it cannot reasonably be presumed that the legislature intended the statute to operate otherwise than as a whole....
 
 
 82
 Where an invalid provision is incidental and subordinate and can be stricken without impairing the efficacy of the act, this will be done....
 
 
 83
 ....
 
 
 84
 A severability clause must be taken into account in determining the legislative purpose unless observance thereof would frustrate the dominant legislative intent....
 
 
 85
 If possible, it is the duty of the courts to give effect to a severability clause and to make an elision, so as not to invalidate an entire act.
 
 
 86
 512 F.2d at 632 (citations omitted) (emphasis added).
 
 
 87
 Under the standard above related, we find that subsection (6) is incidental and subordinate to the entire statutory scheme, and that the rational and legitimate legislative purpose of TCA Sec. 8-23-204 would not be frustrated by eliding subsection (6) and holding that the balance of the statute withstands the challenges made by plaintiffs in this case.
 
 SUMMARY
 
 88
 We have considered each of the constitutional challenges presented by plaintiffs to each of the subsections of TCA Sec. 8-23-204, because we have determined that plaintiffs have standing to challenge each part of this law as well as its application, taken as a whole.
 
 
 89
 We conclude that so long as public employees have a right to associate together in organizations or associations for their common interest, so long as they can petition and advocate their positions individually and collectively, and so long as they can operate in these ways and seek these aims without retaliation, discrimination, suppression, or censorship, their labor relation rights have not been constitutionally infringed. Smith v. Arkansas State Highway, supra. The state, however, may deal with such public employee organizations and regulate speech and advocacy rights of its employees in a fashion different from private employers. Pickering v. Board of Education, supra.
 
 
 90
 A state may differentiate between public employee organizations in granting access to public facilities and in bestowing benefits so long as there is a reasonable and rational basis in these actions. McGowan v. Maryland, supra; Perry Educ. Association v. Perry Local, supra; Memphis Am. Fed. of Teachers v. Board of Education, supra. The state need not recognize or respond to demands or petitions of public employee organizations.
 
 
 91
 With these principles in mind, we have concluded that only the language of subsection (6) of the act in question, inconsistent with other statutory provisions, restricts unduly plaintiffs' rights of association, and thus offends their constitutional rights. We have decided that eliding subsection (6) is appropriate and in harmony with the Tennessee legislative scheme. Thus we find the balance of TCA Sec. 8-23-204 to be a constitutional enactment that establishes standards and conditions under which the state will grant the benefit of permitting dues checkoff to public employee associations.
 
 
 92
 Secondly, with the exception that we find subsections (5) and (7) of TCA Sec. 8-23-204 constitutional, we AFFIRM the judgment of the district court.
 
 
 93
 GILMORE, District Judge. (Concurring in part and dissenting in part.)
 
 
 94
 I concur in the entirety of the majority's opinion except that, in addition to striking subsection (6) of the Act as unconstitutional on equal protection grounds, I would also find that subsections (5) and (7) offend the Equal Protection Clause of the United States Constitution. I would therefore affirm the district court's decision in its entirety. Brown v. Alexander, 516 F.Supp. 607 (M.D.Tenn.1981).
 
 
 95
 I agree with the majority that plaintiff's First Amendment rights are not violated by the statute in question. There is ample authority for the proposition that, in the public employee context, there is no First Amendment right to dues checkoff or exclusive bargaining privileges. However, I would emphasize that all of the cases so holding involve state regulation of union activity that was content-neutral. None of the cases involve discrimination between different unions on the basis of either ideas or associational activity.
 
 
 96
 For example, in Smith v. Arkansas State Highway Employees, 441 U.S. 463, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979), the Court noted: "Far from taking steps to prohibit or discourage union membership or association, all that the Commission has done in its challenged conduct is simply to ignore the union. That it is free to do." 441 U.S. at 466, 99 S.Ct. at 1828.[1] I believe that the State of Tennessee has done far more than simply "ignore" AFSCME with its statute.
 
 
 97
 In addition, the case law involving some kind of state discrimination between different rival unions all involved the right of the state to favor majority unions, and did not involve any form of content-based regulation. For example, Perry Education Assn. v. Perry Local Educators Assn, --- U.S. ----, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), involved rights given to a union as exclusive bargaining agent under a collective bargaining agreement. There, the Supreme Court noted: "There is, however, no indication that the school board intended to discourage one viewpoint and advance another. We believe it is more accurate to characterize the access policy as based on the status of the respective unions rather than their views." --- U.S. at ----, 103 S.Ct. at 957, 74 L.Ed.2d at 807.
 
 
 98
 Similarly, Memphis American Federation of Teachers v. Board of Education of Memphis, 534 F.2d 699 (6th Cir.1976), involved privileges given to a majority union representing more than 66 percent of the employees, with exclusive bargaining rights under a collective bargaining agreement. The court noted, however, that "The grant of exclusive privileges by the Board to MEA did not involve the Board in regulating either the content or the subject matter of speech in its schools. The Board neither censored nor promoted a particular point of view." 534 F.2d at 702.
 
 
 99
 I believe that subsections (5), (6) and (7) of the statute all involve the State of Tennessee in promoting a particular point of view by favoring one union over another (neither union having a majority of employees or exclusive bargaining rights) on the basis of First Amendment ideas or associational rights. I would therefore analyze these subsections on the basis of a strict scrutiny equal protection analysis and would find these subsections unconstitutional. "[U]nder the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." Police Department v. Mosley, 408 U.S. 92, 96, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972). See also Connecticut State Federation of Teachers v. Board of Education Members, 538 F.2d 471 (2d Cir.1976), where the Court said:
 
 
 100
 Here, were there a discrimination in fact (i.e., one that puts the minority unions at an actual disadvantage in the competition for membership and majority status), between the CFT and CEA locals in their exercise of associational rights, the defendant school boards would be put to the test of demonstrating that the policies in question are necessary to further a compelling state interest.
 
 
 101
 538 F.2d at 483.
 
 
 102
 Under a strict scrutiny analysis, I would find subsections (5) and (7), in addition to subsection (6), unconstitutional, and agree with the conclusion reached by the district court, which held: "But a state cannot choose to support one employee organization over another employee organization simply because members of one organization want to associate with persons from different states or who want to affiliate with other employee organizations." 516 F.Supp. at 618-19.
 
 
 103
 It seems to me that the majority essentially follows this analysis in the part of its opinion striking down subsection (6), and I think the same analysis is applicable to subsections (5) and (7).
 
 
 104
 Subsection (5) requires that the organization have a goal of promoting "An efficient and effective work force in state government in Tennessee." The majority opinion cites cases such as Pickering v. Board of Education, supra; Civil Service Commission v. National Association of Letter Carriers, supra; and Arnett v. Kennedy, supra, for the proposition that the promotion of an "efficient and effective work force" can be a valid objective for a state. I agree with this general proposition.
 
 
 105
 However, none of these cases deals with this goal in the abstract. They all deal with the specific context of an employee-employer relationship and the rights of the state as an employer to discharge employees for certain reasons, and in this context sustain the state's objective as an employer of promoting "an efficient and effective work force." See Pickering (discharge of a teacher for public criticism of a school board); Letter Carriers (upholding provisions of the Hatch Act prohibiting political involvement of federal employees); and Arnett (discharge of a federal employee who accused a supervisor of taking a bribe).
 
 
 106
 There is no indication in this record that AFSCME employees behave any differently on the job than TSEA employees in any specific context that would justify the State of Tennessee, as an employer, in limiting AFSCME's activities. The state has not pointed to one specific instance where AFSCME's activities conflict with a goal of "an efficient and effective work force." Instead, in this context, the standard set by subsection (5) is abstract, ambiguous, standardless, and constitutionally vague. See Shuttlesworth v. City of Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). Unlike the cases cited by the majority, which indeed recognize that in a specific context "an efficient and effective work force" can be a valid state objective, subsection (5) has no rational connection to this goal, and should not survive strict scrutiny.
 
 
 107
 I am equally unpersuaded by the majority's reasoning in upholding subsection (7), the "wholly domestic" requirement. The majority correctly recognizes that, like subsection (6), this clearly impacts on First Amendment associational rights. However, it then goes on to cite and discuss cases that have upheld residency requirements, dealing with requirements favoring local residents over non-local residents for government jobs.
 
 
 108
 Respectfully, I suggest that this is not the point. Subsection (7) does not simply discriminate against non-Tennessee residents in favor of Tennessee residents. Perhaps this would be constitutionally permissible. Its infirmity lies in the fact that it also discriminates against Tennessee residents similarly situated. Two State of Tennessee prison guards, living next door to each other, both paying taxes to the State of Tennessee, both sending their children to Tennessee schools, both, perhaps, even voting for the same elected officials, will receive different treatment by the State of Tennessee if one decides, for First Amendment reasons, to affiliate with the AFSCME Union instead of the TSEA Organization. I think this is unconstitutional discrimination, having no rational relationship to any goal of favoring local residents over nonlocal ones, and certainly not related to any compelling state interest of the State of Tennessee. The brunt of the discrimination in subsection (7) falls not upon AFSCME members in New York or Michigan, even if this were permissible. The discrimination, instead, falls upon Tennessee prison guards, who are the plaintiffs in this case, working for the State of Tennessee, paying taxes in Tennessee, behaving in every way like all other citizens of Tennessee, who are punished for seeking to associate themselves with the AFSCME union.
 
 
 109
 For these reasons, I would strike down subsections (5) and (7), in addition to subsection (6). I agree with the majority's conclusions regarding standing and elision principles under Tennessee law.
 
 
 
 *
 Honorable Horace W. Gilmore, U.S. District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The district court denied an attempted amendment which asserted 42 U.S.C. Secs. 1983, 1985 and 1986 violations and purported pendent state law claims
 
 
 [2]
 Act of August 24, 1912, ch. 389, Sec. 6, 37 Stat. 555
 
 
 [3]
 Brief on behalf of Defendants-appellees, cross-appellant, at 34
 
 
 [4]
 So long as the established membership dues were used by the local "independent" union or for the benefit of its members, it is difficult to discern even a rational basis for that requirement
 
 
 [5]
 See the discussion of the effect of this decision and the Supreme Court's action in Wardwell, 529 F.2d at 627-28
 
 
 [1]
 Similarly, City of Charlotte v. Local 660, 426 U.S. 283, 96 S.Ct. 2036, 48 L.Ed.2d 636 (1976), which found no right to dues checkoff by a union, did not involve discrimination between rival unions