Marian SPENCER, et al., Plaintiffs,

v.

UNITED STATES POSTAL SERVICE,* Defendant.

No. C–1–83–1349.

United States District Court, S.D. Ohio, W.D.

July 16, 1985.

---

* On November 1, 1983, the United States Postal Service (Postal Service) was substituted as defendant herein in place of Robert L. Hardesty,

David E. Babcock, William F. Bolger, C. Neil Benson, Vivian K. Lott, David L. Hyrne, and F.L. McGarvey (*see* doc. 12A).

W. Joseph Dehner, Jr., Cincinnati, Ohio, for plaintiffs.

Elizabeth Gere Whitaker, Asst. U.S. Atty., Arthur R. Goldberg, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendant.

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SPIEGEL, District Judge.

This matter came on for consideration of whether 39 U.S.C. § 3626(e) is unconstitutional as applied to plaintiffs, who represent The Charter Committee of Greater Cincinnati (Charter). The parties have filed cross motions for summary judgment. Specifically, plaintiffs filed their motion for summary judgment requesting a permanent injunction that would require the United States Postal Service (Postal Service) to afford special postage rates to Charter (doc. 26); defendant has responded in opposition (doc. 30). Defendant, likewise, has filed its motion for summary judgment and petitions the Court to find in its favor, to dissolve the preliminary injunction previously issued, and to dismiss plaintiffs' complaint with prejudice (doc. 27); plaintiffs have responded in opposition (doc. 31). Moreover, plaintiffs asked this Court's permission to supplement their motion for summary judgment (doc. 32). Because defense counsel represented to the Court that said motion would not be opposed, and in the interests of justice, that motion to supplement was granted (doc. 33). Plaintiffs' supplemental memorandum and affidavit is embodied in doc. 34.

Those foundational facts that counselled our grant of a preliminary injunction nearly two years ago—one that Ordered the Postal Service to allow Charter the use of § 3626(e)'s special third-class bulk mailing rate—remain unchanged. *See Spencer v. Herdesty,* 571 F.Supp. 444, 447 (S.D.Ohio 1983).[1] Briefly stated, 39 U.S.C. § 3626(e) provides that a "qualified political committee" may have the benefit of a special third-class rate for bulk mailings. Charter, however, by the terms of the statute, is not a "qualified political committee" because it has no state committee. In fact, Charter's ideology specifically precludes it from eligibility because it is a party that, by virtue of its exclusive focus on local government, eschews affiliation with any state or national political organization. As a consequence, then, Charter brings suit against the Postal Service on first amendment and equal protection grounds.

The positions advocated by the parties are straightforward enough. Plaintiffs begin with two propositions. First, any regulation of the mails involves a concomitant regulation of the expression of ideas and information. *Greenberg v. Bolger,* 497 F.Supp. 756, 778 (E.D.N.Y.1980). Second,

---

1. We will not reiterate those facts already set forth in our Opinion and Order Granting Plaintiffs' Motion for Preliminary Injunction cited in the text accompanying this footnote. To the extent that the parties' discovery has unturned additional facts germane to our ruling, we shall include them at the appropriate juncture.

the first amendment precludes the government from regulating ideas and information because of their content. *Police Department of Chicago v. Mosley,* 408 U.S. 92, 95–96, 92 S.Ct. 2286, 2289–90, 33 L.Ed.2d 212 (1972). Based on the above principles, and the founding ideology of their Charter party, they conclude that a statute that denies a special rate to political groups without state affiliation strikes at the essence of the tenets for which they stand and thus unconstitutionally abridges their freedom of speech. And, armed with this purported first amendment violation, plaintiffs contend also that they have been denied equal protection of the laws as the Postal Service cannot withstand the strict scrutiny analysis this Court is bound to apply in cases in which a fundamental right—freedom of speech—is involved. *See Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969).

Defendant counters that plaintiffs' first amendment rights have not been abridged by virtue of Charter's ineligibility to mail its materials at the special rate. On the authority of *Regan v. Taxation with Representation of Washington (TWR),* 461 U.S. 540, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983), defendant maintains that the Constitution is not offended simply because Congress declines to subsidize an organization's exercise of its first amendment rights. The Postal Service additionally cites *Brown v. Alexander,* 718 F.2d 1417 (6th Cir.1983), a Sixth Circuit ruling handed down subsequent to our granting the injunctive preliminary relief sought by plaintiffs, for the proposition that no constitutional violation ensues when a content-neutral statute denies a group that fails to meet certain conditions a valuable "organizational" benefit.

Defendant contends further that we ought not to find § 3626(e) unconstitutional as its impact on Charter is inconsequential. In support, the Postal Service notes that Charter's "competition" took sparing advantage of their special rate mailing privileges. Specifically, in the last two City Council elections, the Ohio Republican Party (ORP) made no bulk mailings in support of local Republican candidates, and the Democratic Party (ODP) made only two. Charter, then, so the theory goes, has not been disadvantaged substantially. Moreover, defendant maintains that the ongoing coalition between Charterites and the Democrats—as evidenced by, among other things, a sample ballot, jointly endorsed, mailed under the auspices of the ODP—renders any "competition" between the two parties a fiction, and, thus any denial of the special rate, indirect as Charter persumably has the option to tag along with ODP mailings.[2] Defendant suggests to the Court that this incidental and *de minimis* effect on Charter's rights alone entitles it to prevail in this first amendment challenge. *See Walsh v. Louisiana High School Athletic Ass'n,* 616 F.2d 152, 158 (5th Cir.1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981). Failing our adoption of *Walsh,* however, the Postal Service argues that proof of a rational basis behind enactment of § 3626(e) suffices in the face of a *de minimis* burden on free speech, *citing Clements v. Fashing,* 457 U.S. 957, 971–73, 102 S.Ct. 2836, 2847–49, 73 L.Ed.2d 508, *reh'g denied,* 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1404 (1982); *McCarthy v. Hornbeck,* 590 F.Supp. 936, 946 (D.Md.1984); *Coalition for Sensible and Humane Solutions v. Wamser,* 590 F.Supp. 217, 221 (E.D.Mo. 1984).

**2.** Defendant's theory concerning Charter's indirect access to the special rate seemingly loses much of its force in the face of plaintiffs' supplemental memorandum and affidavit in support of their motion for summary judgment and in opposition to defendant's motion for summary judgment wherein the split between the Charterites and the Democrats is chronicled. While we attach no significance to the fact that defendant did not object to the filing of said document, we are unsure how to interpret the Postal Service's absolute lack of comment as to how—if at all—this political divorce affect what seems to be one of its primary arguments. Defendant's silence is of no moment, however, because we are unimpressed, as our upcoming reasoning indicates, with the *de minimis* argument so promulgated.

Finally, with respect to plaintiffs' equal protection claim, the theory of recovery defendant believes is most suited to the instant facts, the Postal Service urges that it need only show a rational basis for its decision to exclude non-state affiliated parties as § 3626(e), in its view, does not interfere directly with Charter's freedom of speech. Fo:. the reasons described below, on the facts before us, having weighed all these arguments, we consider plaintiffs' position to be the better one, and accordingly adopt it over that advocated by defendant.

In so ruling, we feel obliged to distinguish the Sixth Circuit's decision in *Brown v. Alexander*, which stands, we think, as defendant's most persuasive authority.[3] In *Brown*, certain prison guards challenged the constitutionality of a state statute that provided for payroll deductions for payment of association dues. The statute required, however, that the union command a 20% membership statewide to qualify for the dues checkoff. The guards maintained that that qualification violated their first amendment and equal protection rights. Our parent circuit disagreed, and quite succinctly set forth its reasoning.

> The issue in this case, however, is not that the State of Tennessee by this law excludes plaintiffs from organizational activities or from associating together; nor it is claimed that through this law Tennessee denies plaintiffs an opportunity to be heard on an equal basis with TSEA; rather the complaint is directed towards permitting TSEA, which meets certain conditions, to a dues checkoff, in contrast to plaintiffs who do not meet these same conditions. The real contention in this case, then, is not that the

State through the law in controversy denies plaintiffs the right to speak, or to advocate, or to associate, or to petition to redress grievances, or to picket; rather it is that the law enables the state to differentiate between plaintiffs and other labor associations if either meets certain conditions and the other does not as to a dues checkoff privilege.

718 F.2d at 1428. We perceive the facts before us to be distinctly different. Perhaps on the surface it appears that the Postal Service simply is distinguishing between state committee affiliates and Charter because the former meet a condition that the latter does not. Critically, though, that "condition" goes to the heart of the reason why Charter was founded—that is, to shun statewide affinity and promote a local focus. We are confronted, unlike the Sixth Circuit, with a group that was denied a mailing privilege solely because its precepts preclude it establishing a statewide network. That denial is an affront to Charter's first amendment rights.

That the Democrats and Republicans are infrequent users, in defendant's view, of the special rate is of no consequence. They are afforded at all times, it seems, with the option. Defendant does not persuade this Court of the soundness of its *de minimis* argument as to the infringement of Charter's first amendment rights. Neither *Clements*, 457 U.S. at 971–73, 102 S.Ct. at 2847–49 nor *Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood, Ohio*, 699 F.2d 303 (6th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983) are apposite. *Clements* concerned a state statute requiring all

---

**3.** In support of its motion for summary judgment, defendant suggests that because the Sixth Circuit cited the *TWR* case in *Brown*, we ought to reconsider our position, expressed at the time we issued the preliminary injunction, that *TWR* does not apply to the instant facts. Our reading of *Brown* reveals that the Court reached its decision independent of the Supreme Court's ruling in *TWR*. In addition, we remain convinced that the cause now before us poses questions dissimilar from those raised in *TWR*. The government's reason behind the subsidy denial had neither the purpose nor—more important-

ly—the effect of treating the entity TWR differently because of its founding tenets. Rather, all lobbying groups, regardless of the causes championed, were ineligible for subsidy. *See TWR*, 461 U.S. at 544, 103 S.Ct. at 2000. While some "subsidy" accrues in connection with allowance of the special mailing rate, under these facts, the commands of the first amendment should not be viewed without force or effect. *See generally NAACP Legal Defense & Educational Fund, Inc. v. Devine*, 727 F.2d 1247, 1256 (D.C.Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 322, 83 L.Ed.2d 259 (1984).

**994**

would-be candidates, without regard to the philosophy of their sponsoring party, to resign their then-held elected state office before officially declaring candidacy for another state office. *Lakewood,* a zoning case, decided that a local ordinance that prohibited construction of church buildings, without regard to the beliefs or practices of any particular denomination, does not violate the first amendment.

We decline to follow defendant's proposition that we employ a rational basis review to plaintiffs' equal protection claim as the Court finds that a fundamental right—freedom of speech and association—is involved. *Shapiro,* 394 U.S. at 634, 89 S.Ct. at 1331. Because defendant outlines no reasons purportedly sufficient to withstand a strict scrutiny analysis, and as none come to mind, we conclude that defendant cannot defend successfully against Charter's equal protection challenge.

In summary, we make clear that it is the effect of § 3626(e)'s qualification vis-a-vis Charter's philosophy that prompts our decision, yet, at the same time, narrows it. Without a doubt, political parties founded for reasons other than those that define the Charter party stand on a different footing, but, as applied to Charter, we conclude that § 3626(e) is unconstitutional. Because our ruling is so limited, we think it unnecessary to invite additional briefing and conduct a hearing on the remedy to be applied. The Court believes it appropriate redress for Charter to continue to be afforded the special mailing rate and we hereby Order that the preliminary injunction heretofore granted be made permanent.

SO ORDERED.